# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

APRIL L. TUDOR,
613 Franklin Street,
Genoa City, WI 53128,

                Plaintiff,

                                   CIVIL ACTION NO. _____

    v.

VILLAGE OF GENOA CITY, a municipal corporation, VILLAGE OF GENOA CITY VILLAGE BOARD, VILLAGE OF GENOA CITY PLANNING COMMISSION, VILLAGE OF GENOA CITY ZONING DEPARTMENT, VILLAGE OF GENOA CITY PRESIDENT KENNETH PARKER, BUILDING INSPECTOR/ZONING ADMINISTRATOR JAMES DELUCA, VILLAGE ATTORNEY LINDA GRAY, VILLAGE ATTORNEY STEVEN HARVEY, VILLAGE OF GENOA CITY POLICE CHIEF JOSEPH BALOG, VILLAGE OF GENOA CITY LIEUTENANT STEVEN BAPPERT, VILLAGE OF GENOA CITY POLICE OFFICER SHAUN SOWA, VILLAGE OF GENOA CITY POLICE OFFICER KIMBERLY GOLDSWORTHY,
755 Fellows Road,
Genoa City, WI 53128,

WILLIAM ANTTI,
219 Walworth Street,
Genoa City, WI 53128,

ELLIS BORDER,
850 Platt Avenue,
Lake Geneva, WI 53147,

CLAUDIA JUREWICZ,
609 Sumner Street,
Genoa City, WI 53128,

EMPLOYERS MUTUAL CASUALTY COMPANY, d/b/a EMC INSURANCE COMPANIES,
717 Mulberry Street,
Des Moines, IA 50309-3872,

ABC INSURANCE COMPANY,

DEF INSURANCE COMPANY,

GHI INSURANCE COMPANY,

JKL INSURANCE COMPANY,

MNO INSURANCE COMPANY,

PQR INSURANCE COMPANY,

JAMES DELUCA d/b/a
MUNICIPAL SERVICES, L.L.C.,
1469 Creek Side Drive,
Lyons, WI 53148,

WILLIAM B. NETTLETON, d/b/a
NETTLETON DEVELOPMENT, L.L.C.,
407 Nettleton Way
Genoa City, WI 53128,

      and

SANDRA K. WILLIAMS,
555 Sumner Street
Genoa City, WI 53128.

Defendants.

---

# COMPLAINT

---

The Plaintiff, April Lynn Tudor (hereinafter "Tudor"), by and through her attorneys, La Fleur Law Office, S.C., and as and for her causes of action against the above-named Defendants, alleges and shows claim for relief as follows:

## I. NATURE OF ACTION

1.     This action is a claim for compensatory and punitive damages and attorney's fees and costs, brought pursuant to 42 U.S.C. §§ 1983 and 1988, for violations by Defendants, acting under the color of state law, of Plaintiff Tudor's rights under the Constitution of the United States, as well as State of Wisconsin statutory and common law, brought to redress the injuries

2

inflicted on her, as a citizen of the United States and the State of Wisconsin, by the above-named Defendants.

## II. JURISDICTION AND VENUE

2. This Court has original jurisdiction over the claims made in this complaint pursuant to 28 U.S.C. § 1331, because the cause of action arises under the United States Constitution and 42 U.S.C. § 1983.

3. This Court also has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue in this Court is appropriate pursuant to 28 U.S.C. § 1391(b), because the events or omissions giving rise to these claims occurred in Walworth County, Wisconsin, within the Eastern District of Wisconsin.

## III. PARTIES

5. That the Plaintiff, April Lynn Tudor, is an adult and resides at 613 Franklin Street in the Village of Genoa City, Walworth County, State of Wisconsin, 53128.

6. That the Defendant, Village of Genoa City (hereinafter "Village"), is a municipal corporation, organized and existing under the laws of the State of Wisconsin, whose principal offices are located at 755 Fellows Road, Genoa City, Walworth County, State of Wisconsin, 53128.

7. That the Defendant, Village of Genoa City Village Board (hereinafter "Village Board") is a governmental agency, whose principal offices are located 755 Fellows Road, Genoa City, Walworth County, State of Wisconsin, 53128. That, upon information and belief, at all times material hereto, said Defendant exercised oversight authority over all other agencies

3

of the Village of Genoa City, and all employees and contractors of the Village of Genoa City.

8.      That the Defendant, Village of Genoa City Planning Commission (hereinafter "Planning Commission"), is a governmental agency, whose principal offices are located 755 Fellows Road, Genoa City, Walworth County, State of Wisconsin, 53128. That, upon information and belief, at all times material hereto, said Defendant exercised oversight and legislative authority over the Village of Genoa City's Zoning Department, including the Building Inspector and Zoning Administrator, and the Village of Genoa City Code of Ordinances, including ordinances regarding zoning and fences.

9.      That the Defendant, Village of Genoa City Zoning Department (hereinafter "Zoning Department"), is a governmental agency, whose principal offices are located 755 Fellows Road, Genoa City, Walworth County, State of Wisconsin, 53128. That, upon information and belief, at all times material hereto, said Defendant possessed authority over zoning matters within the Village and over the issuance of permits.

10.    That the Defendant, William Antti (hereinafter "Antti"), is an adult resident of the State of Wisconsin and resides at 219 Walworth Street, Genoa City, WI 53128. Antti was the Village President for the Village of Genoa City until the April 2021 election of Kenneth Parker.

11.    That the Defendant, Kenneth Parker (hereinafter "Parker") is an adult resident of the State of Wisconsin and is the current Village President for the Village of Genoa City having been elected in April, 2021. Parker resides at 518 Fellows Road, Genoa City, WI 53128.

4

12.    That the Defendant, Ellis Border (hereinafter "Border") is an adult resident of the State of Wisconsin and was the Building Inspector and Zoning Administrator for the Village of Genoa City. Border resides at 850 Platt Avenue, Lake Geneva, WI 53147.

13.    That the Defendant, James DeLuca (hereinafter "DeLuca"), is an adult resident of the State of Wisconsin, is the owner of Municipal Services L.L.C., and is the current Building Inspector and Zoning Administrator for the Village of Genoa City, having been contracted through Municipal Services, L.L.C. beginning June 1, 2021, to present. On information and belief DeLuca resides at 1469 Creek Side Dr. Burlington, WI 53105. That all allegations against DeLuca are imputed to Municipal Services, L.L.C. as he served as the Building Inspector and Zoning Administrator through that limited liability company.

14.    That the Defendant, Municipal Services, L.L.C. (hereinafter "Municipal Services"), is a domestic limited liability corporation, organized and existing under the laws of the State of Wisconsin, and owned and operated by James DeLuca, whose principal offices are located at 1469 Creek Side Drive, Lyons, Walworth County, State of Wisconsin, 53148. Municipal Services' registered agent James DeLuca is located at 1469 Creek Side Drive, Lyons, Walworth County, State of Wisconsin, 53148. That all allegations against Defendant DeLuca are imputed Municipal Services, as he served as the Building Inspector and Zoning Administrator through Municipal Services.

15.    That the Defendant, ABC Insurance Company, is a fictitious insurance company named pursuant to Wis. Stat. §807.12, that had in full force and effect during DeLuca's employment as the Village of Genoa City Building Inspector and Zoning Administrator, a professional liability policy of insurance which insured DeLuca through his employment

at Municipal Services, L.L.C., and which may provide coverage for the damages to Plaintiff Tudor caused by DeLuca.

16. That the Defendant, Linda Gray (hereinafter "Attorney Gray") is an attorney licensed to practice law in the State of Wisconsin and is an employee of Oleniczak Law, L.L.C., with its offices located at 2847 Buell Drive, C, East Troy, WI 53120. That at all times material hereto, Attorney Gray was hired as the Village Attorney for the Village of Genoa City. That Attorney Gray resides at W2720 Friemoth Road, East Troy, WI 53120.

17. That the Defendant, DEF Insurance Company, is a fictitious insurance company named pursuant to Wis. Stat. §807.12, that had in full force and effect during Attorney Gray's representation of the Village, at all times material hereto, a professional liability policy of insurance which insured Attorney Gray through her employment at Oleniczak Law, L.L.C., and for the Village, and which may provide coverage for the damages to Plaintiff Tudor caused by Attorney Gray.

18. That the Defendant, Steven Harvey (hereinafter "Attorney Harvey"), is an attorney licensed to practice law in the State of Wisconsin, is an employee of Steven Harvey Law L.L.C., with its offices located at 1034 Ann Street, # D, Delavan, WI 53115. That Attorney Harvey was hired by the Village to represent the Village of Genoa City with Attorney Gray and assist with municipal prosecutions against Tudor. Attorney Harvey resides at 115 Carriage Way, #4, Palmyra, WI 53156.

19. That the Defendant, GHI Insurance Company, is an unknown insurance company named pursuant to Wis. Stat. §807.12, that had in full force and effect during Attorney Harvey's representation of the Village, a professional liability policy of insurance which insured Attorney Harvey through his employment at Steven Harvey Law L.L.C., and for the

6

Village, and which may provide coverage for the damages to Plaintiff Tudor caused by Attorney Harvey.

20.     That the Defendant, Claudia Jurewicz (hereinafter "Jurewicz"), is an adult resident of the State of Wisconsin, and at all times material hereto, was the Clerk and Treasurer for the Village of Genoa City, having retired in December, 2021. Jurewicz resides at 609 Sumner St., Genoa City, WI 53128.

21.     That the Defendant, Joseph Balog (hereinafter "Chief Balog"), is an adult resident of the State of Wisconsin and employed by the Village of Genoa City as Chief of Police for the Village of Genoa City Police Department. That at all times material hereto, Balog was acting within the scope of his employment as Chief of Police for the Village of Genoa City Police Department. Chief Balog resides at 273 Meadow Drive, Genoa City, WI 53128.

22.     That the Defendant, Steven Bappert (hereinafter "Lieutenant Bappert"), is an adult resident of the State of Wisconsin and employed by the Village of Genoa City as Police Lieutenant for the Village of Genoa City Police Department. That at all times material hereto, Lieutenant Bappert was acting within the scope of his employment as a Police Lieutenant for the Village of Genoa City Police Department. Lieutenant Bappert resides at N1133 Beechwood Rd., Genoa City, WI 53128.

23.     That the Defendant, Police Officer Shaun Sowa (hereinafter "Officer Sowa"), is an adult resident of the State of Wisconsin and employed by the Village of Genoa City as a Police Officer for the Village of Genoa City Police Department. That at all times material hereto, said defendant was acting within the scope of his employment as a police officer for the Village of Genoa City Police Department. On information and belief, Officer Sowa resides at 225 Maple Street, Walworth, WI 53184.

24. That the Defendant, Police Officer Dieter Holtz (hereinafter "Officer Holtz"), is an adult resident of the State of Wisconsin and employed by the Village of Genoa City as a Police Officer for the Village of Genoa City Police Department. That at all times material hereto, said defendant was acting within the scope of his employment as a police officer for the Village of Genoa City Police Department. Officer Holtz resides at W1261 East Forest Road, Genoa City, WI 53128.

25. That the Defendant, Police Officer Kimberly Goldsworthy (hereinafter "Officer Goldsworthy"), is an adult resident of the State of Wisconsin and employed by the Village of Genoa City as a Police Officer for the Village of Genoa City Police Department. That at all times material hereto, said defendant was acting within the scope of her employment as a police officer for the Village of Genoa City Police Department. On information and belief, Officer Goldsworthy resides at 522 Pine Street, Delavan, WI 53115.

26. That the Defendant, EMC Insurance Companies (hereinafter "EMC"), is a foreign insurance corporation licensed to do business in the State of Wisconsin with its home office and principal place of business located at 717 Mulberry Street, Des Moines, IA 50309-3872. EMC's registered agent is David Young, located at 16455 West Bluemound Road, Brookfield, WI 53005-5976.

27. That the Defendant, William B. Nettleton (hereinafter "Nettleton"), is an adult and resides at 407 Nettleton Way, Village of Genoa City, WI 53128, Walworth County, WI. That Defendant Nettleton, through Nettleton Development L.L.C., is the owner of property located at 530 Freeman Street, in the Village of Genoa City, Walworth County, WI, and is a neighbor of Plaintiff Tudor.

28.     That the Defendant, JKL Insurance Company, is a fictitious insurance company named pursuant to Wis. Stat. §807.12, that had in full force and effect during all times material to, a personal liability policy of insurance which insured Nettleton as the owner of his property, and which may provide coverage for the damages to Plaintiff Tudor caused by Nettleton.

29.     That the Defendant, Nettleton Development, L.L.C. (hereinafter "Nettleton Development"), is a domestic limited liability company, organized and existing under the laws of the State of Wisconsin, and is owned and operated by William B. Nettleton, whose principal offices are located at 407 Nettleton Way, Genoa City, Walworth County, State of Wisconsin, 53128-2199. Nettleton Development's registered agent, Bill Nettleton Jr., is located at 407 Nettleton Way, Genoa City, Walworth County, WI, 53128-2199.

30.     That the Defendant, MNO Insurance Company, is a fictitious insurance company named pursuant to Wis. Stat. §807.12, that had in full force and effect during Nettleton's ownership of Nettleton Development, a general liability policy of insurance which insured Nettleton as the owner of Nettleton Development, L.L.C., and which may provide coverage for the damages to Plaintiff Tudor caused by Nettleton Development.

31.     That the Defendant, Sandra K. Williams (hereinafter "Williams"), is an adult and resides at 555 Sumner Street in the Village of Genoa City, Walworth County, WI, and is a neighbor of Plaintiff Tudor. That, upon information and belief, at all times material hereto said defendant served as a member of the Village of Genoa City Planning Commission.

32.     That the Defendant, PQR Insurance Company, is a fictitious insurance company named pursuant to Wis. Stat. §807.12, that had in full force and effect during all times material to,

9

a personal liability policy of insurance which insured Williams as the owner of her home, and which may provide coverage for the damages to Plaintiff Tudor caused by Williams.

## IV. FACTS

33. That Plaintiff Tudor is an honorably discharged veteran of the United States Navy.

34. That on September 21, 2018, Plaintiff Tudor purchased her home located at 613 Franklin Street in the Village of Genoa City, Wisconsin.

35. That on August 2, 2019, Plaintiff Tudor submitted an application to build a decorative fence that was to be constructed of vintage doors along one side of her property, adjacent to Defendant Williams, and a picket fence along the rest of the yard, including the portion adjacent to Defendant Nettleton, and that such application was submitted to the then Building Inspector/Zoning Administrator, Defendant Border.

36. That Plaintiff Tudor discussed the application and fence plans with Defendant Border who required that she print a copy of the lot lines for her property from the Walworth County GIS Viewer, which she did.

37. That Plaintiff Tudor had her fence permit approved by Defendant Village on August 9, 2019.

38. That Plaintiff Tudor installed fences along her property, per her permit, including the decorative fence constructed of vintage doors along the east side of her property.

39. That, upon information and belief, Defendant Village received complaints regarding the decorative fence constructed of vintage doors from Defendant Williams throughout August and September 2019.

10

40. That on September 13, 2019, Defendant Border sent a text message to Plaintiff Tudor stating that Defendant Village Board directed him to enforce the 'no solid fence' ordinance against her.

41. That on September 13, 2019, Defendant Border sent a text message to Plaintiff Tudor stating that he was in possession of a survey showing that the lot line was 10 ¾ inches off of the concrete foundation of Defendant Williams' garage and asked Tudor to ensure that the fence was on her side of the property line.

42. That, upon information and belief, Defendant Village was in possession of no such survey at that time, or alternatively, failed to disclose such a survey in response to open records requests, discovery requests, and subpoenas in Walworth County Case No. 2021 FO 000807.

43. That on September 13, 2019, Defendant Border sent a text message to Plaintiff Tudor stating that Defendant Williams was on the Village Planning Commission and that she had spoken to Defendant Antti the previous evening regarding Plaintiff's fence and was forcing the issue of her complaints about Tudor's fence constructed of vintage doors to be addressed by the Village.

44. That throughout September 2019, Defendant Border exchanged numerous text messages with Plaintiff Tudor regarding her fence and stated that the decorative fence constructed of vintage doors was in violation of several Village ordinances.

45. That on October 21, 2019, Defendant Border sent a letter to Plaintiff Tudor stating that she had ten days to show that she was bringing her fence into compliance or else she would be given a citation.

11

46.     That shortly after receiving the October 21, 2019, letter from Defendant Border, Plaintiff Tudor met with Defendants Antti and Williams. That, at this meeting, Antti informed Plaintiff and Williams that the fence was compliant with the Village's ordinances and that no enforcement action would be taken.

47.     That on November 5, 2019, Plaintiff Tudor received citation #GG808TDXWV for zoning violations regarding the decorative fence constructed of vintage doors. That, upon information and belief, this citation was issued by Defendant Lieutenant Bappert.

48.     That under §310-69 B.(6) of the Village of Genoa City Code of Ordinances, the Zoning Department, through the Administrators—Defendants Ellis and DeLuca—are required to enforce the ordinances under Chapter 310-69, with the assistance of the Village Attorney, Defendant Attorney Gray. Neither Defendant DeLuca nor Defendant Attorney Gray attempted to enforce the ordinances prior to filing actions against Plaintiff Tudor.

49.     That under §62-11-1(3) and (5) of the Village of Genoa City Code of Ordinances, the Code Enforcement Officer has the duty and responsibility to prepare all permit applications for the building inspector, issue permits, and to investigate land use complaints and violations.

50.     That the duties of Defendants Zoning Department, Border, and DeLuca in enforcing the zoning provisions of the Genoa City Code of Ordinances required them to investigate facts and make determinations regarding lot lines before citations could be issued, determinations that could not be made without a court order resolving the boundary line dispute.

51.     That at all times material hereto, the Code Enforcement Officer position remained unfilled by Defendants Village, Parker, and Antti.

52. That, upon information and belief, during all times material hereto, some of the duties of the Code Enforcement Officer position were carried out, without authorization or amendment to the Code, by officials within the Village, including Defendants Lieutenant Bappert, Jurewicz, Border, and DeLuca and with apparent approval by the Defendants Antti and Parker.

53. That the Defendant Planning Commission, under §15-2 D.(2) of the Village of Genoa City Code of Ordinances, has jurisdiction over "all plats of lands in the Village" and that such matters "shall" be referred to the Planning Commission, before the Defendant Village Board may take action.

54. That on November 14, 2019, Defendant Planning Commission held a meeting which included discussion of revisions to the Village's fencing ordinances and building code. That as a member of the Planning Commission, Defendant Williams took part in the discussion of the alleged need to amend the code. That the notes from that meeting state that the code "is not detailed enough and is causing some issues in the Village."

55. That, upon information and belief, the Village's Code of Ordinances was amended in January 2020 to restrict the use of the materials and construction methods employed by Tudor for her decorative fence constructed of vintage doors.

56. That on December 19, 2019, Plaintiff Tudor received citation #GG808VN005 for zoning violations regarding the decorative fence constructed of vintage doors, issued by Defendant Lieutenant Bappert.

57. That on December 21, 2019, Plaintiff Tudor received a letter from Defendant Lieutenant Bappert stating that, according to him, Tudor's fence was not up to code and that Tudor had 10 days to correct the violation or more citations would be issued. There is no Village

of Genoa City ordinance that authorizes Lieutenant Bappert to enforce building/zoning ordinances.

58.　That on January 29, 2020, Plaintiff Tudor received a Village of Genoa City Police Department Certificate of Correction, related to her fence, which cited the entirety of Chapter 310 of the Village's Code of Ordinances.

59.　That on March 24, 2020, Plaintiff Tudor received a letter from Defendant Lieutenant Bappert stating that Tudor's fence was not up to code, that she was receiving another citation, and that she had 10 days to correct the violation or that more citations would be issued.

60.　That on March 24, 2020, Plaintiff Tudor received another citation, #GG808VN00B, for zoning violations regarding the decorative fence constructed of vintage doors, issued by Defendant Lieutenant Bappert.

61.　That on March 24, 2020, Plaintiff Tudor, received a second Village of Genoa City Police Department Certificate of Correction, related to her fence, which cited the entire chapter of the Village's code of ordinances regarding zoning.

62.　That on June 9, 2020, Defendant Williams' attorney, Michael A. Forella III of Seymour, Kremer, Koch L.L.P., sent a letter to Plaintiff Tudor claiming trespass upon Williams' property without citation to survey.

63.　That throughout June 2020, Defendants Williams, Lieutenant Bappert, and Officer Holtz, exchanged emails regarding service of the June 9th Forella letter by certified mail and expressed the willingness of the officers to personally deliver Williams' attorney's letter themselves.

64. That on June 6, 2020, Defendant Border instructed Defendant Lieutenant Bappert, via email, to continue to issue citations for zoning citations to Plaintiff Tudor, despite there being no court order resolving the alleged boundary dispute between Defendant Williams and Plaintiff Tudor. During this email exchange Defendant Border also inquired of Attorney Gray about obtaining a raze order for Plaintiff Tudor's fence, again without court order.

65. That on July 17, 2020, Plaintiff Tudor received a letter from Defendant Lieutenant Bappert alleging that her fence was not up to code, that she was receiving another citation, and that she would continue to receive citations "weekly" until her fence "comes into compliance."

66. That on July 24, 2020, Plaintiff Tudor received a letter from Defendant Lieutenant Bappert stating that he personally observed that the Plaintiff's fence was not up to code as of that date, that she was receiving another 7 citations, and that she would receive a similar letter and citations the next week if her fence was not in compliance. That Defendants Jurewicz, Border, Chief Balog, and Antti were all copied on this letter and none of them intervened to stop Lieutenant Bappert from issuing citations he had no authority or legal basis to enforce.

67. That between July 17 and 31, 2020, Plaintiff received the following citations on an almost daily basis for alleged zoning violations regarding the decorative fence constructed of vintage doors:

| *Citation* | *Date* | *Fine* | *Citation Number* |
|---|---|---|---|
| Zoning Violation Citation | 7/17/2020 | $263.50 | GG808TDXX9 |
| Zoning Violation Citation | 7/18/2020 | $263.50 | GG808VN00K |
| Zoning Violation Citation | 7/19/2020 | $263.50 | GG808VN00L |
| Zoning Violation Citation | 7/20/2020 | $263.50 | GG808VN00M |
| Zoning Violation Citation | 7/21/2020 | $263.50 | GG808VN00N |
| Zoning Violation Citation | 7/22/2020 | $263.50 | GG808VN00P |

15

| Zoning Violation Citation | 7/23/2020 | $263.50 | GG808VN00Q |
|---|---|---|---|
| Zoning Violation Citation | 7/24/2020 | $263.50 | GG808VN00R |
| Zoning Violation Citation | 7/25/2020 | $263.50 | GG803B000F |
| Zoning Violation Citation | 7/26/2020 | $263.50 | GG803B000G |
| Zoning Violation Citation | 7/27/2020 | $263.50 | GG803B000H |
| Zoning Violation Citation | 7/28/2020 | $263.50 | GG803B000J |
| Zoning Violation Citation | 7/29/2020 | $263.50 | GG803B000K |
| Zoning Violation Citation | 7/30/2020 | $263.50 | GG803B000L |
| Zoning Violation Citation | 7/31/2020 | $263.50 | GG803B000M |

68.   That on August 1, 2020, Plaintiff Tudor received a letter from Defendant Officer Holtz stating that he personally observed that the Plaintiff's fence was not up to code as of the previous day, that she was receiving another 7 citations, and that she would receive a similar letter and citations the next week if her fence was not in compliance.

69.   That on August 1, 2020, Defendant Officer Holtz sent a letter to Plaintiff Tudor stating that she was receiving a citation for each day of the previous week for non-compliance. This letter also states that citations issued to Plaintiff Tudor "will continue until your fence is corrected or until a judge determines your fence, in its current state, is in compliance. On 7/31/2020 I observed that your fence is not in compliance", without citation to the ordinance. This letter was copied to Defendants Jurewicz, Border, Chief Balog, and Antti and none of them intervened to stop Lieutenant Bappert from attempting to enforce citations he had no right to enforce.

70.   That on or about August 9, 2020, Plaintiff Tudor reached an agreement with Defendant Village to resolve the dispute regarding the decorative fence constructed of vintage doors along the east side of her property.

71.   That Plaintiff Tudor's agreement with Defendant Village resulted in a stipulation and order signed by the Court, the Honorable Kristine E. Drettwan presiding, Walworth County Case No. 2020FO000620, *Dkt.* 8, and included the dismissal of all but one zoning citation, to

16

which Tudor plead no-contest. That this agreement also included a 45-day deadline to remove the decorative fence constructed of vintage doors.

72.     That Plaintiff Tudor entered this agreement on the mistaken belief that doing so would resolve the issues between herself, Defendant Williams, and Defendant Village and cease the harassment by the Village employees against her, and that she had no choice given the large fines associated with each of the citations. She did not believe that her fence was in violation of any part of the Village of Genoa City Code of Ordinances.

73.     That on September 15, 2020, Plaintiff Tudor had a survey conducted in preparation for the removal of her decorative fence constructed of vintage doors which was to be replaced with a board-on-board privacy fence. The plat of survey was filed, prepared, and notarized on September 24, 2020. The plat of survey recorded with the register of deeds is stamped as having been received on February 2, 2021.

74.     That on September 29, 2020, Plaintiff Tudor submitted an application to Defendant Village to construct her board-on-board privacy fence.

75.     That, upon information and belief, Defendant Williams called police on October 5, 2020, as Plaintiff Tudor was in the process of removing her decorative fence constructed of vintage doors. That Defendant Officer Holtz responded and informed Tudor that she would be receiving a citation for disorderly conduct.

76.     That on October 6, 2020, Plaintiff Tudor's application to construct her board-on-board privacy fence was approved by the Defendant Village.

77.     That on October 6, 2020, Defendant Officer Holtz sent a letter to Plaintiff stating that she was being issued citations for disorderly conduct occurring on October 5, 2020.

78.     That, upon information and belief, Defendant Williams called police on October 10, 2020, as Plaintiff Tudor was in the process of installing a board-on-board privacy fence, after having confronted Plaintiff about her fence. That Defendant Lieutenant Bappert responded at approximately 1:53 P.M. and spoke with Tudor about the construction of her fence. That the interaction recorded on Defendant Lieutenant Bappert's body-worn camera was less than three minutes in length, did not include the issuance of citations, or threat to issue citations, and included Defendant Lieutenant Bappert stating that he was only there to pass along a message that the fence panels Tudor was constructing, but had not yet installed, should face the opposite direction as they were propped up before the installation process began.

79.     That later on October 10, 2020, at approximately 3:52 P.M. Defendant Lieutenant Bappert sent an email to Defendants Chief Balog and Officers Sowa, Holtz, Goldsworthy, along with other officers of the Genoa City Police Department, with the subject line "APRIL TUDOR to be ARRESTED" stating that Tudor "is to be arrested and taken to jail" and that she "needs to learn that process."

80.     That pursuant to the permit approved on October 6, 2020, Plaintiff Tudor also built a picket fence along the west side of her property.

81.     That on October 11, 2020, Defendant Officer Goldsworthy sent a letter to Plaintiff stating that she was being issued citations for incidents occurring on October 10, 2020.

82.     That on October 12, 2020, Defendant Williams filed for a restraining order, Walworth County Case Number 2020CV000531, alleging that she was afraid of Tudor because of Tudor's post traumatic stress disorder ("P.T.S.D.") and believed that she might have firearms.

83.     That on October 14, 2020, Defendant Lieutenant Bappert sent a letter to Plaintiff Tudor

        stating that she was being issued a citation for Public Nuisance for "Continuous Violation

        of Village Ordinances."

84.     That at no time material hereto did Plaintiff Tudor possess firearms.

85.     That, at the hearing on October 22, 2020, Defendant Williams' request for restraining order

        was denied by the Walworth County Circuit Court.

86.     That between October 5 and 13, 2020, Plaintiff Tudor received the following citations

        related to confrontations initiated by Defendant Williams about Tudor's fence:

| *Citation* | *Date* | *Fine* | *Citation Number* |
|---|---|---|---|
| Disorderly Conduct Citation | 10/5/2020 | $767.50 | GG803B000P |
| Trespassing Citation | 10/10/2020 | $263.50 | GG808VN00T |
| Criminal Damage to Property Citation | 10/10/2020 | $767.50 | GG808M7RCK |
| Vandalism Citation | 10/10/2020 | $767.50 | GG808VN00S |
| Criminal Damage to Property Citation | 10/13/2020 | $767.50 | GG808TDXXM |
| Public Nuisance Citation | 10/13/2020 | $1,200.00 | GG808TDXXL |

87.     That on May 27, 2021, Defendant Officer Holtz wrote a letter to Plaintiff Tudor stating

        that the Village had received complaints about a Ford Explorer parked on the street near

        Tudor's home. That, upon information and belief, the complaints were made by Defendant

        Williams. That the letter acknowledged that the vehicle was registered in Illinois to a

        Christine Handle, and that the letter was addressed to both Tudor and Handle. That the

        letter threatened to issue citations to Tudor if the vehicle was not moved.

88.     That beginning on June 12, 2021, Defendant Officer Holtz began issuing citations to

        Plaintiff Tudor for Storage of Junk or Abandoned Vehicle and Street Storage Prohibited

        for a vehicle parked in front of Tudor's home.

89.     That the vehicle parked in front of Plaintiff Tudor's home was not registered to Tudor.

19

90.     That when contacted by Defendant Lieutenant Bappert, Plaintiff Tudor attempted to

provide information on the vehicle's registered owner, but that Lieutenant Bappert refused

to accept the information and informed Tudor that she would continue to be cited.

91.     That on June 12 and 22, 2021, Defendant Officer Holtz issued the following citations to

Plaintiff Tudor:

| Citation | Date | Fine | Citation Number |
|----------|------|------|-----------------|
| Storage of Junk of Abandoned Vehicle | 6/12/2021 | $263.50 | GG802JJ8ZV |
| Storage of Junk of Abandoned Vehicle | 6/22/2021 | $263.50 | GG802G26NH |
| Storage of Junk of Abandoned Vehicle | 6/22/2021 | $263.50 | GG8026N00M |
| Storage of Junk of Abandoned Vehicle | 6/22/2021 | $263.50 | GG8026N00N |
| Storage of Junk of Abandoned Vehicle | 6/22/2021 | $263.50 | GG8026N00W |
| Storage of Junk of Abandoned Vehicle | 6/22/2021 | $263.50 | GG8026N00V |
| Street Storage Prohibited | 6/22/2021 | $263.50 | GG8026N00T |
| Street Storage Prohibited | 6/22/2021 | $263.50 | GG8026N00S |
| Street Storage Prohibited | 6/22/2021 | $263.50 | GG8026N00Q |
| Street Storage Prohibited | 6/22/2021 | $263.50 | GG8026N00K |
| Street Storage Prohibited | 6/22/2021 | $263.50 | GG8026N00R |
| Street Storage Prohibited | 6/22/2021 | $263.50 | GG802JJ902 |
| Street Storage Prohibited | 6/22/2021 | $263.50 | GG802G26NJ |
| Storage of Junk of Abandoned Vehicle | 6/22/2021 | $263.50 | GG8026N00J |
| Storage of Junk of Abandoned Vehicle | 6/22/2021 | $263.50 | GG8026N00X |
| Storage of Junk of Abandoned Vehicle | 6/22/2021 | $263.50 | GG802JJ903 |
| Street Storage Prohibited | 6/22/2021 | $263.50 | GG8026N00L |
| Street Storage Prohibited | 6/22/2021 | $263.50 | GG8026N00P |
| Storage of Junk of Abandoned Vehicle | 6/22/2021 | $263.50 | GG8026N00Z |

92.     That Plaintiff Tudor, in a letter informing the court of her intent to enter a not guilty plea

dated June 26, 2021, informed the Court that the vehicle was not hers, but she was found

in default on all citations, despite being in the courtroom as the Court Commissioner called

her case, asking Defendant Lieutenant Bappert how the Court should find.

93.     That on June 26, 2021, Plaintiff Tudor was issued citation #GG8025DXVW for Criminal

Trespass to Land.

20

94. That citation #GG8025DXVW for Criminal Trespass to Land was issued while Plaintiff Tudor was in Florida.

95. That, upon information or belief, Defendant Village had the Ford Explorer towed on July 6, 2021.

96. That throughout July, 2021, Plaintiff Tudor worked closely with Defendant DeLuca on obtaining a permit to construct a patio, the application for which included information about offsets including measurements related to the location of Tudor's fences.

97. That in an email dated July 2, 2021, Defendant DeLuca informed Plaintiff Tudor that he was not allowed by law to locate lot lines.

98. That on July 12, 2021, Defendant Nettleton emailed Defendant Lieutenant Bappert regarding Plaintiff Tudor's patio project. That Defendant Lieutenant Bappert asked Defendant Nettleton in response: "I'm assuming her property starts at her fence line. Is that correct?" To which Defendant Nettleton responded: "Correct."

99. That Defendant Village approved the application for her patio, issuing the patio permit on July 19, 2021.

100. That after constructing her picket fence, Defendant DeLuca told Plaintiff Tudor that this fence was slightly over her property line and encroached on a vacant lot along the west side of her property, without citation to survey or surveyor.

101. That upon returning from Florida on or about July 7, 2021, Plaintiff Tudor was informed by workers she had hired to work on her patio that her neighbor, Defendant Nettleton, had left a note asking her to call him regarding her fence.

21

102. That after Plaintiff Tudor was told of the alleged fence encroachment, Tudor spoke on the phone with Defendant Nettleton. That during the phone call, Defendant Nettleton asked that the fence be relocated.

103. That on July 23, 2021, Defendant DeLuca told Plaintiff Tudor that the fence encroached by approximately 2.5 feet, without conducting any survey of the fence and/or the disputed property line. Deluca told her she would have to move her fence.

104. That after Plaintiff Tudor was told of the alleged encroachment, she relocated her fence, moving it closer to her house.

105. That Plaintiff relocated her fence based on the fear that she would again be cited if she did not do what she was instructed to by Defendants Nettleton and DeLuca, not because she believed its location to be incorrect.

106. That on or about August 1-3, 2021, during and after Plaintiff Tudor moved her fence, Defendants Bappert, Jurewicz, and DeLuca exchanged emails stating their belief that the fence was allegedly still over the property line, without citation to survey or surveyor.

107. That on August 3, 2021, Plaintiff Tudor received a letter from Defendant Lieutenant Bappert stating that because the Village has been unable to "gain compliance," that three citations would be issued "DAILY until she is in compliance."

108. That between August 3, 2021 and September 22, 2021, Plaintiff Tudor received the following citations related to the placement of her fence totaling, $67,000.00 in forfeitures:

| Citation | Date | Fine | Citation Number |
|---|---|---|---|
| Trespass to Land Citation | 8/3/2021 | $1,000.00 | GG8025DXW3 |
| Trespass to Land Citation | 8/3/2021 | $1,000.00 | GG8025DXW4 |
| Zoning Violation Citation | 8/3/2021 | $1,000.00 | GG8025DXW2 |
| Trespass to Land Citation | 8/4/2021 | $1,000.00 | GG8027W13Q |
| Trespass to Land Citation | 8/4/2021 | $1,000.00 | GG8027W13R |

22

| | | | |
|---|---|---|---|
| Zoning Violation Citation | 8/4/2021 | $1,000.00 | GG8027W13P |
| Zoning Violation Citation | 8/5/2021 | $1,000.00 | GG8027W13S |
| Trespass to Land Citation | 8/5/2021 | $1,000.00 | GG8027W13T |
| Trespass to Land Citation | 8/5/2021 | $1,000.00 | GG8027W13V |
| Trespass to Land Citation | 8/23/2021 | $1,000.00 | GG8027W13Z |
| Trespass to Land Citation | 8/23/2021 | $1,000.00 | GG8027W13X |
| Zoning Violation Citation | 8/23/2021 | $1,000.00 | GG8027W13W |
| Zoning Violation Citation | 8/24/2021 | $1,000.00 | GG8025DXW5 |
| Trespass to Land Citation | 8/24/2021 | $1,000.00 | GG8025DXW7 |
| Trespass to Land Citation | 8/24/2021 | $1,000.00 | GG8025DXW6 |
| Trespass to Land Citation | 8/25/2021 | $1,000.00 | GG8025DXW8 |
| Zoning Violation Citation | 8/25/2021 | $1,000.00 | GG8025DXWB |
| Trespass to Land Citation | 8/25/2021 | $1,000.00 | GG8025DXW9 |
| Zoning Violation Citation | 8/26/2021 | $1,000.00 | GG802G26P1 |
| Trespass to Land Citation | 8/26/2021 | $1,000.00 | GG802G26P2 |
| Trespass to Land Citation | 8/26/2021 | $1,000.00 | GG802G26P3 |
| Trespass to Land Citation | 8/29/2021 | $1,000.00 | GG8025DXWT |
| Trespass to Land Citation | 8/29/2021 | $1,000.00 | GG8025DXWV |
| Trespass to Land Citation | 8/29/2021 | $1,000.00 | GG8025DXWN |
| Trespass to Land Citation | 8/30/2021 | $1,000.00 | GG8025DXWP |
| Trespass to Land Citation | 8/30/2021 | $1,000.00 | GG8025DXWS |
| Trespass to Land Citation | 8/30/2021 | $1,000.00 | GG8025DXWW |
| Trespass to Land Citation | 8/31/2021 | $1,000.00 | GG8025DXWR |
| Trespass to Land Citation | 8/31/2021 | $1,000.00 | GG8025DXWX |
| Zoning Violation Citation | 8/31/2021 | $1,000.00 | GG8025DXWQ |
| Trespass to Land Citation | 9/1/2021 | $1,000.00 | GG8027W140 |
| Trespass to Land Citation | 9/1/2021 | $1,000.00 | GG8027W141 |
| Zoning Violation Citation | 9/1/2021 | $1,000.00 | GG8027W142 |
| Zoning Violation Citation | 9/5/2021 | $1,000.00 | GG8027W144 |
| Trespass to Land Citation | 9/5/2021 | $1,000.00 | GG8027W147 |
| Trespass to Land Citation | 9/5/2021 | $1,000.00 | GG8027W14D |
| Trespass to Land Citation | 9/6/2021 | $1,000.00 | GG8027W148 |
| Trespass to Land Citation | 9/6/2021 | $1,000.00 | GG8027W14C |
| Zoning Violation Citation | 9/6/2021 | $1,000.00 | GG8027W145 |
| Trespass to Land Citation | 9/7/2021 | $1,000.00 | GG8027W149 |
| Trespass to Land Citation | 9/7/2021 | $1,000.00 | GG8027W14B |
| Zoning Violation Citation | 9/7/2021 | $1,000.00 | GG8027W146 |
| Trespass to Land Citation | 9/8/2021 | $1,000.00 | GG8025DXX6 |
| Trespass to Land Citation | 9/8/2021 | $1,000.00 | GG8025DXX7 |

| | | | |
|---|---|---|---|
| Zoning Violation Citation | 9/8/2021 | $1,000.00 | GG8025DXWZ |
| Zoning Violation Citation | 9/9/2021 | $1,000.00 | GG8025DXX0 |
| Trespass to Land Citation | 9/9/2021 | $1,000.00 | GG8025DXX5 |
| Trespass to Land Citation | 9/9/2021 | $1,000.00 | GG8025DXX8 |
| Trespass to Land Citation | 9/12/2021 | $1,000.00 | GG8025DXX9 |
| Trespass to Land Citation | 9/12/2021 | $1,000.00 | GG8025DXX4 |
| Zoning Violation Citation | 9/12/2021 | $1,000.00 | GG8025DXX1 |
| Trespass to Land Citation | 9/13/2021 | $1,000.00 | GG8025DXXB |
| Zoning Violation Citation | 9/13/2021 | $1,000.00 | GG8025DXX2 |
| Trespass to Land Citation | 9/14/2021 | $1,000.00 | GG8025DXXC |
| Zoning Violation Citation | 9/14/2021 | $1,000.00 | GG8025DXX3 |
| Trespass to Land Citation | 9/15/2021 | $1,000.00 | GG8025DXXQ |
| Zoning Violation Citation | 9/15/2021 | $1,000.00 | GG8025DXXF |
| Trespass to Land Citation | 9/16/2021 | $1,000.00 | GG8025DXXP |
| Zoning Violation Citation | 9/16/2021 | $1,000.00 | GG8025DXXG |
| Trespass to Land Citation | 9/19/2021 | $1,000.00 | GG8025DXXN |
| Zoning Violation Citation | 9/19/2021 | $1,000.00 | GG8025DXXH |
| Trespass to Land Citation | 9/20/2021 | $1,000.00 | GG8025DXXM |
| Zoning Violation Citation | 9/20/2021 | $1,000.00 | GG8025DXXJ |
| Zoning Violation Citation | 9/21/2021 | $1,000.00 | GG8025DXXK |
| Trespass to Land Citation | 9/21/2021 | $1,000.00 | GG8025DXXL |
| Zoning Violation Citation | 9/22/2021 | $1,000.00 | GG8027W14G |
| Trespass to Land Citation | 9/22/2021 | $1,000.00 | GG8027W14F |

109. That citations issued to Plaintiff Tudor between August 3, 2021, and September 22, 2021, were only issued by Defendant Lieutenant Bappert, and only on days that he was working.

110. That all of the trespassing citations issued between August 3, 2021, and September 22, 2021, have been dismissed. That 41 of the trespassing citations were dismissed by the Walworth County Circuit Court on February 21, 2022, based on the finding that a fence is an object that cannot enter the property of another under Wis. Stat. § 943.11(1m)(a), after extensive briefing and argument by Plaintiff Tudor's counsel.

24

111. That during the hearing in which the 41 citations were dismissed the by Court, it admonished the Village stating, "you can't give a citation for trespass every single day thereafter, I mean this is, in my mind, pretty clearly improper."

112. That one trespassing citation, #GG8027W13V, remained open after Defendant Village, by Defendants Attorney Gray and Attorney Harvey, insisted that the prosecution continue on the theory that someone, either Plaintiff Tudor or her agent, had to have trespassed in order to build her fence.

113. That Defendant Village, by Defendants Attorney Gray and Attorney Harvey, insisted that the single case remain open with no regard for the facts of the underlying citation, and the fact that different underlying citations were issued based on complaints by two diffferent alleged victims, 21 for alleged trespassing on Defendant Nettleton's property and 21 for alleged trespassing on Defendant Williams' property. That the single citation remaining was issued for alleged trespass onto the property of Defendant Williams on August 5, 2021, the third straight day on which Tudor was issued three citations totaling $3,000 per day in fines, despite stating that the theory for trespass in the case was that Plaintiff Tudor or her agent trespassed to construct the fence.

114. That, upon information and belief, Defendant Village never had a complaining witness who observed Plaintiff Tudor trespass onto the property of another on August 5, 2021.

115. That Defendant Lieutenant Bappert testified on April 14, 2022, that he did not observe Plaintiff Tudor trespass onto the property of another on August 5, 2021, or at any other time between August 3 and September 22, 2021.

116. That Defendant Lieutenant Bappert, in his Affidavit dated February 14, 2021, stated that the trespassing citations issued by him between August 3 and September 22, 2021, were

issued based on the locations of Plaintiff Tudor's fences. That Defendant Lieutenant Bappert's Affidavit does not state Plaintiff Tudor personally entered the property of another.

117. That Defendant Lieutenant Bappert, in his Affidavit dated February 14, 2021, stated that the trespassing citations issued by him between August 3 and September 22, 2021, were issued based on his investigation which included the use of "the ONEVIEW GIS portal."

118. That the 'ONEVIEW GIS portal, hosted at https://gisinfo.co.walworth.wi.us/oneview/ alerts visitors to the domain of the following disclaimer:

> "Welcome to the Walworth County GIS Viewer
> The Walworth County Land Information GIS website provides online access to Walworth County land information. The information provided in this application has been produced and processed from sources believed to be reliable. No warranty, expressed or implied, is made regarding accuracy, adequacy, completeness, legality, reliability or usefulness of this information. The information contained herein will not be accepted as an official document. Walworth County shall assume no liability for:
> 1. Any errors, omissions, or inaccuracies in the information provided regardless of how caused; or
> 2. Any decision made or action taken or not taken by reader in reliance upon any information or data furnished hereunder."

119. That Defendant DeLuca testified on April 14, 2022, that he did not instruct Defendant Lieutenant Bappert to issue citations and described the GIS disclaimer regarding reliability of the information as "public record."

120. That in response to Plaintiff Tudor's discovery requests in Walworth County Case No. 2021 FO 000807, Defendant Lieutenant Bappert's response, sworn on April 6, 2022, but received by Tudor's Attorneys on April 4, 2022, to a request that Defendant Village "[i]dentify all information provided by all persons, including but not limited to [complainants] and alleged victims, involved in the preparation of citation GG8027W13V"

26

was : "On October 5, 2020 Sandra Williams provided a verbal complaint for trespassing by the Defendant."

121. That citation GG8027W13V, for conduct that allegedly occurred on October 5, 2020, was not issued until August 5, 2021.

122. That no citation for trespassing was issued to Tudor on October 5, 2021, and instead Defendant Officer Holtz issued a citation for Disorderly Conduct related to his interaction with Tudor on October 5, 2021, as stated in Defendant Officer Holtz's letter to Tudor of October 6, 2021.

123. That Defendant Village never possessed any evidence of who constructed Plaintiff Tudor's fence.

124. That, at all times material hereto, during the municipal prosecution, no court order determining lot lines was ever sought by either of Tudor's neighbors, the alleged victims of the alleged trespasses, Defendants Williams and Nettleton, or by the Village.

125. That after Plaintiff Tudor incurred extensive attorney's fees and costs to conduct discovery, make open records requests, and take depositions in order to defend herself, Defendant Village moved for voluntary dismissal of the remaining trespassing citation in Walworth County Case No. 2021 FO 000807 on April 7, 2022.

126. On May 2, 2022, the Walworth County Circuit Court dismissed the remaining forfeiture action with prejudice in Walworth County Circuit Court Case No. 2021 FO 000807.

127. That, upon information and belief, Defendant Village conducted no further investigation related to its prosecution in Walworth County Case No. 2021 FO 000807, between the hearing on February 21, 2022, when it requested that the case remain open, and April 7, 2022, when it moved for voluntary dismissal.

27

128. That Defendant Village made no discovery requests to Plaintiff Tudor related to its prosecution in Walworth County Case No. 2021 FO 000807, between the hearing on February 21, 2022, when it requested that the case remain open, and April 7, 2022, when it moved for voluntary dismissal.

129. That all of the zoning violation citations issued to Plaintiff Tudor between August 3, 2021, and September 22, 2021, remain open.

130. That the Village amended all 25 citations at the hearing on May 2, 2022, in response to Plaintiff Tudor's motion to dismiss based on failure to state a violation with specificity as to the provision of the Genoa City Code of Ordinances that was allegedly violated, as required by Wisconsin common law.

131. That on August 23, 2021, Defendant Lieutenant Bappert sent an email to Defendants Williams and Nettleton stating that the fences were on "the property of two other private citizens who can remove the fence if they want."

132. That on August 24, 2021, Defendant Lieutenant Bappert sent an email to Defendant DeLuca informing him that Defendant Nettleton wanted to take down Plaintiff Tudor's fence and asked if DeLuca "can be out here to meet [Nettleton and Bappert] to make sure we are looking at the right line so [Nettleton] knows where to cut?"

133. That Defendant DeLuca testified on April 14, 2022, that "to identify a lot line, you need to be a licensed land surveyor."

134. That, upon information and belief, none of the Defendants to this action are licensed land surveyors.

135. That on August 24, 2021, upon learning of Defendant Nettleton's intent to take down Plaintiff Tudor's fence, Defendant DeLuca sent an email to Defendant Lieutenant Bappert

stating that he "recommended a court order to do so to protect him," but took no affirmative action to stop Lieutenant Bappert.

136. That on August 25, 2021, Defendant DeLuca sent an email to Defendant Lieutenant Bappert stating: "You can give me April's number again I will gladly let her know we will move forward with additional citations and if she cannot prove she moved it correctly off the land more tickets and we are encouraging joint lawsuit for damages to property owners," despite the fact there was no Court determination of accurate lot lines between Plaintiff Tudor and Defendants Nettleton and Williams.

137. That on August 25, 2021, Defendant Lieutenant Bappert sent an email to Defendant Attorney Gray asking: "Bill [Nettleton] and Sandy [Williams] are both inquiring as to if the village is going to do anything because she's breaking the law. I guess they want the fence down, but don't want to spend the time getting a court order. Will/can the village issue a raze order and charge her for the removal[?]" Attorney Gray made no effort to take the steps required under Village Ordinaces and applicable Wisconsin law to resolve the lot line issues or to remind Defendant Lieutenant Bappert that he no lawful authority to enforce lot lines.

138. That, after Plaintiff Tudor did not acquiesce to the Defendants Village's and Lieutenant Bappert's demands, Defendant Nettleton contacted Defendant Lieutenant Bappert throughout August and September 2021, via e-mail, to inform him that he would be removing the fence without seeking a court order resolving the dispute. That Defendant Lieutenant Bappert did not refer defendant Nettleton to Defendants DeLuca or Attorney Gray for lawful resolution of his dispute.

139. That Defendant Lieutenant Bappert, in the course of his employment, prescheduled a meeting with Defendant Nettleton to oversee the bulldozing of Plaintiff Tudor's fence on September 13, 2021.

140. That on September 13, 2021, Defendant Lieutenant Bappert arrived for the meeting at Plaintiff Tudor's property and spoke with Defendant Nettleton, as he determined where he was going to bulldoze.

141. That after observing Defendants Nettleton and Bappert outside with a bulldozer, Plaintiff Tudor and her friend walked outside to the area of her property line to speak with Defendant Lieutenant Bappert, as she had received no notice that her fence was to be destroyed absent a court order.

142. That upon informing Plaintiff Tudor that the fence was going to be removed, a disagreement between Tudor and Defendant Lieutenant Bappert ensued based on the unresolved property line and, at one point, Bappert spoke on the phone with Tudor's attorney, Michael Masnica of Rizzo & Diersen, S.C.

143. That Defendant Lieutenant Bappert eventually called for back-up from Genoa City Police Department and the Walworth County Sheriff's Department, and Defendant Officer Sowa arrived on scene, despite there being no court order for the removal of Plaintiff Tudor's fence.

144. That Defendant Lieutenant Bappert used demeaning, inflammatory, and abusive language toward Plaintiff Tudor throughout his interactions with her on September 13, 2021.

145. That Plaintiff Tudor initially offered to provide Defendant Lieutenant Bappert with a copy of her survey conducted in September 2020, but Bappert refused the offer.

30

146. That after overhearing Plaintiff Tudor complain on the phone to her attorney, Defendant Lieutenant Bappert yelled that he would look at the survey and that Tudor should put her attorney on speaker phone.

147. That Plaintiff Tudor told Defendants Nettleton and Lieutenant Bappert that they were on her property.

148. That in response to Plaintiff Tudor's statement regarding the disputed boundary, Defendant Lieutenant Bappert told Tudor that she had five seconds to back up or that she was going to be arrested.

149. That Defendant Lieutenant Bappert approached Plaintiff Tudor, violently yanked her arms into an unnatural position, turned her around, and began placing her in handcuffs.

150. That after placing Plaintiff Tudor in handcuffs, he violently yanked her arms and began walking her barefoot, over portions of limestone, toward his squad car, all the while verbally berating Tudor and threatening criminal charges.

151. That Defendant Lieutenant Bappert violently attempted to shove Plaintiff Tudor into the back of his police vehicle.

152. That Defendant Lieutenant Bappert called for an ambulance to transport Plaintiff Tudor.

153. That while waiting for the ambulance to arrive, Defendants Bappert and Sowa continued to use demeaning and abusive language toward Plaintiff Tudor and attempted to demonstrate a copy of her survey where the disputed property line, unresolved by court order, was located.

154. That Defendant Lieutenant Bappert, at all times material hereto, has no experience, training, or education in land surveying.

155. That once the ambulance arrived, Defendant Lieutenant Bappert shoved Tudor into the ambulance, violently slammed her onto a gurney where she landed on the handcuffs behind her back, grabbing and pushing Tudor in order to place her in full body restraints.

156. That after Plaintiff Tudor was placed in the ambulance, two Walworth County Sheriff's Deputies arrived on scene.

157. That after Fire Chief Frederic Schalow and Fire Fighter Bradley Kinsch of the Bloomfield Genoa City Fire and Rescue informed Genoa City Police that they would not transport Plaintiff Tudor to the jail, Plaintiff Tudor was placed in Defendant Sowa's police vehicle and transported to the Walworth County Jail.

158. That after Plaintiff Tudor was transported to the jail, Defendant Lieutenant Bappert and the two Walworth County Sheriff's Deputies remained on scene to observe the unlawful destruction of Plaintiff Tudor's fence by Defendant Nettleton, with a transporting loader/front end loader.

159. That Defendant Lieutenant Bappert provided instruction to Defendant Nettleton regarding the unlawful destruction of the fence, including where and how to cut the portion of the fence that Defendant Lieutenant Bappert alleged was rightfully on Plaintiff Tudor's property, without a court order resolving the boundary line dispute, contrary to the laws of the State of Wisconsin.

160. That as a result of the arrest by Defendants Lieutenant Bappert and Officer Sowa, after being booked into the Walworth County Jail, Plaintiff Tudor spent the night in jail, and while there was denied adequate dosage of her prescription medication and was unable to seek proper medical attention for the injuries sustained during her arrest.

161. That upon release, Tudor sought further medical attention from Aurora Urgent Care-Lake Geneva where she was treated for a sprained left wrist, sprained lumbar spine, bruising to the upper arms, and bruising to the right knee and thigh, injuries which were proximately caused by Defendant Lieutenant Bappert's violent and unwarranted conduct during her arrest.

162. That after September 22, 2021, Plaintiff Tudor ceased receiving citations related to her fences, even though she had made no alterations to her fences subsequent to her arrest on September 13, 2021.

163. That on November 30, 2021, Defendant Chief Balog wrote a letter to Plaintiff Tudor warning her that her Christmas decorations were in violation of certain ordinances and threatened to issue citations if the decorations were not removed. That during the following week, Defendant Chief Balog attempted to personally serve Plaintiff Tudor with said letter at her residence.

164. That after Defendant Chief Balog contacted Plaintiff Tudor's attorneys on or about December 8, 2021, no citations were issued related to Tudor's Christmas decorations.

165. Harassment of Plaintiff Tudor by the above-named defendants continues as Genoa City Police vehicles frequently drive by her home, operate their lights and sirens in front of her home, and then turn them off after passing.

166. That Defendant Williams has harassed Plaintiff Tudor during all times material hereto by unreasonably and unnecessarily summoning the police to Plaintiff's home on such numerous occasions as to cause a nuisance citation to be issued to Plaintiff, placing cameras aimed at Plaintiff's yard and the rear and side windows of her home, verbally abusing

Plaintiff, throwing glass and other debris onto Plaintiff's property, harassing Plaintiff's dogs, and filing an unfounded injunction against her.

167. That the Village has referred forfeitures to the Department of Revenue while various Defendants have made threats to have Plaintiff Tudor's house seized.

168. That as of the date of the filing of this complaint, forfeitures referred by the Village to the Department of Revenue total $5,743.00. That as of the date of the filing of this complaint, the following citations have been referred to the Department of Revenue:

| Citation | Citation Number | Date Referred | Fine |
|---|---|---|---|
| Street Storage Prohibited | GG8026N00L | 11/15/2021 | $263.50 |
| Street Storage Prohibited | GG8026N00K | 11/15/2021 | $263.50 |
| Street Storage Prohibited | GG8026N00P | 11/15/2021 | $263.50 |
| Street Storage Prohibited | GG8026N00T | 11/15/2021 | $263.50 |
| Street Storage Prohibited | GG8026N00Q | 11/15/2021 | $263.50 |
| Street Storage Prohibited | GG802G26NJ | 11/15/2021 | $263.50 |
| Street Storage Prohibited | GG802JJ902 | 11/15/2021 | $263.50 |
| Street Storage Prohibited | GG8026N00S | 11/15/2021 | $263.50 |
| Street Storage Prohibited | GG8026N00R | 11/15/2021 | $263.50 |
| Storage of Junk of Abandoned Vehicle | GG8026N00J | 11/15/2021 | $263.50 |
| Storage of Junk of Abandoned Vehicle | GG8026N00N | 11/15/2021 | $263.50 |
| Storage of Junk of Abandoned Vehicle | GG8026N00Z | 11/15/2021 | $263.50 |
| Storage of Junk of Abandoned Vehicle | GG8026N00X | 11/15/2021 | $263.50 |
| Storage of Junk of Abandoned Vehicle | GG8026N00V | 11/15/2021 | $263.50 |
| Storage of Junk of Abandoned Vehicle | GG802G26NH | 11/15/2021 | $263.50 |
| Storage of Junk of Abandoned Vehicle | GG802JJ903 | 11/15/2021 | $263.50 |
| Storage of Junk of Abandoned Vehicle | GG8026N00M | 11/15/2021 | $263.50 |
| Storage of Junk of Abandoned Vehicle | GG8026N00W | 11/15/2021 | $263.50 |
| Trespass to Land Citation | GG8025DXVW | 11/15/2021 | $1,000.00 |

34

169.    That the legal actions against Plaintiff Tudor continue without legal basis and serve to harass her, cause her emotional distress, and negatively affect her credit rating.

170.    That due to the Defendant Village's insistence, by Defendants Attorney Gray and Attorney Harvey, on continuing the prosecution of dozens of zoning violations, worth $25,000 in total fines, without specific citation to The Village's code of ordinances and without a court order resolving the boundary dispute, Plaintiff Tudor has incurred , and continues to incur, extensive legal fees.

171.    That as of the filing of complaint, Plaintiff Tudor has incurred legal fees and costs, through La Fleur Law Office, S.C., in excess of $100,000. It is expected that she will continue to incur significant legal expenses to defend herself.

172.    That as a result of all of the Defendants' unlawful and harassing actions, Plaintiff Tudor suffered a sprained left wrist, sprained lumbar spine, bruising to the upper arms, and bruising to the right knee and thigh and continues to suffer increased symptoms of P.T.S.D., emotional distress, inability to sleep, fear in her own home, agoraphobia, nightmares, flashbacks, anxiety, an inability to perform simple daily tasks, and the need for increased prescription medication, the time lost in moving her fences without reason, the loss of materials for her destroyed fence and the labor and materials to replace, and has suffered significant financial hardship, including but not limited to past and future medical expenses and legal fees and costs.

## V. CLAIMS FOR RELIEF

### *CLAIM I*
### CAUSE OF ACTION FOR RELIEF UNDER 42 U.S.C § 1983

#### *Unlawful Arrest*

173. Plaintiff Tudor re-alleges the allegations in paragraphs 1 through 172 against Defendants Village, Lieutenant Bappert, and Officer Sowa above as though fully stated and incorporated herein.

174. That at all times relevant hereto, the Defendant Village was a person for the purposes of 42 U.S.C. §1983. That at all times relevant hereto, Defendants Lieutenant Bappert and Officer Sowa, were "persons" for purposes of 42 U.S.C. §1983, and acted under color of law to deprive Plaintiff Tudor of her constitutional and civil rights.

175. That Defendants Lieutenant Bappert and Officer Sowa arrested Plaintiff Tudor on September 13, 2021, for disorderly conduct related to Plaintiff Tudor's objection to having her fence removed without warning and without a court order resolving the boundary line dispute between her and Defendant Nettleton.

176. That at the time of the arrest, Plaintiff Tudor was not engaging in and had not engaged in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct, instead, she was only seeking to peacefully and lawfully protect her private property through a call to her lawyer.

177. That at the time of the arrest, Plaintiff Tudor's conduct was not likely to cause or provoke a disturbance.

178. That at the time of the arrest, the facts and circumstances within Defendants Lieutenant Bappert's and Officer Sowa's knowledge would not have led a reasonably prudent person

36

in their position to believe that Tudor had committed, was committing, or was about to commit the crime of disorderly conduct.

179. That at the time of the arrest, Defendant Lieutenant Bappert was engaging in behavior that was violent, abusive, indecent, profane, boisterous, unreasonably loud and otherwise disorderly. That such conduct was outside of his duties as Police Lieutenant and in violation of state law.

180. That at the time of the arrest, Defendant Nettleton's conduct in attempting to forcibly remove Tudor's fence, without a court order resolving the boundary dispute, was unlawful and caused and provoked a disturbance.

181. That at the time of the arrest, Defendant Lieutenant Bappert's conduct in supervising and instructing Defendant Nettleton on how to forcibly remove Tudor's fence, without a court order resolving the boundary dispute, was unlawful and caused and provoked a disturbance.

182. That at the time of the arrest, Defendants Lieutenant Bappert and Officer Sowa lacked probable cause to arrest Tudor for disorderly conduct.

183. That at the time of the arrest, Plaintiff Tudor was experiencing panic and feelings of re-victimization and, based on her P.T.S.D., was particularly vulnerable to male officers who attempted to control her unreasonably.

184. That based upon the prescheduling of the meeting between Defendants Nettleton and Lieutenant Bappert to remove Plaintiff Tudor's fence, absent court order and notice to Tudor, the email sent by Lieutenant Bappert instructing officers of the Genoa City Police Department to arrest Tudor, Lieutenant Bappert's history of verbal abuse and harassing behavior toward Tudor, and his conduct in coordinating with Defendants Nettleton, Officer

37

Sowa, Jurewicz, and DeLuca, all of whom took no action to ensure that his conduct was lawful, Lieutenant Bappert acted with evil motive or intent, acted maliciously, and with reckless disregard or deliberate indifference towards Tudor's mental and physical well-being and in disregard of her constitutional rights.

185. That Defendants Lieutenant Bappert's and Officer Sowa's unlawful arrest of Tudor violated Tudor's rights under the 4th and 14th Amendments of the U.S. Constitution to be free from unreasonable seizure.

186. That Plaintiff Tudor was trying to protect her constitutionally guaranteed property rights by encouraging Defendant Lieutenant Bappert to speak with her attorney, Michael Masnica.

187. That Defendant Lieutenant Bappert ignored information provided by Plaintiff Tudor's attorney, Michael Masnica, thereby intentionally escalating the situation.

188. That as a direct and proximate result of Defendants Lieutenant Bappert's and Officer Sowa's unlawful arrest of Plaintiff Tudor, Tudor suffered significantly from triggers to her P.T.S.D., has been prescribed additional prescription medications and has had dosages increased on her existing prescriptions, has been unable to sleep through the night and is only able to periodically nap thorough the day and night to the detriment of her physical and psychological health, has suffered increased irritability, anxiety, depression and disruption of her normal activities.

189. That as a direct and proximate result of Defendants Lieutenant Bappert's and Officer Sowa's unlawful arrest of Plaintiff Tudor, Tudor was unable to seek immediate medical attention for physical injuries resulting from the arrest including a sprained left wrist, sprained lumbar spine, bruising to the upper arms, and bruising to the right knee and thigh.

190. That as a result of defendants' unlawful arrest, Plaintiff Tudor has endured past pain, suffering and disability and will likely endure future pain, suffering and disability; she has incurred past medical expenses and will likely incur future medical future medical expenses all to her damages in an amount to be determined at trial.

191. That the conduct of the Defendants Lieutenant Bappert and Officer Sowa was unlawful, extreme, malicious, outrageous, and/or intentional, displayed a reckless or callous indifference toward Plaintiff Tudor's constitutionally protected right to be free from unreasonable seizure such that punitive damages are warranted.

192. That Defendant Village is liable pursuant to Wis. Stat. § 895.46, for payment of any judgment entered against the individual police officer employees Defendants Lieutenant Bappert and Officer Sowa, because said Defendants were acting within the scope of their employment and under color of state law when they unlawfully arrested Plaintiff Tudor.

*Excessive Force*

193. Plaintiff Tudor re-alleges the allegations in paragraphs 1 through 192 against Defendant Lieutenant Bappert above as though fully stated and incorporated herein.

194. That at all times relevant hereto, Defendant Lieutenant Bappert was a "person" for purposes of 42 U.S.C. §1983, and acted under color of law to deprive Plaintiff Tudor of her constitutional and civil rights.

195. That Defendant Lieutenant Bappert's actions in arresting Tudor on September 13, 2021, including but not limited to, pushing and shoving Tudor to place her in handcuffs, shoving Tudor once she was already placed in handcuffs, dragging her barefoot across curshed stone, shoving Tudor into his police vehicle, shoving Tudor into an ambulance, violently slamming Tudor onto a gurney inside an ambulance where she landed on the handcuffs

behind her back, grabbing and pushing Tudor in order and to place restraints on her on a gurney, were prolonged and brutal and caused Tudor injury.

196. That on September 13, 2021, prior to and during the process of arresting Plaintiff Tudor, Defendant Lieutenant Bappert used unnecessary, verbally abusive, intimidating, harassing, and threatening language toward Tudor.

197. That the alleged crime for which Defendant Lieutenant Bappert arrested Tudor—disorderly conduct related to Plaintiff Tudor's objection to having her fence unlawfully removed without a court order resolving the boundary line dispute between her and Defendant Nettleton—was a Class B misdemeanor of low severity.

198. That at all times relevant hereto, Plaintiff Tudor did not pose an immediate threat to the safety of Bappert or others.

199. That at all times relevant hereto, Tudor did not actively resist arrest but instead, was seeking to preserve her property.

200. That at all times relevant to this cause of action, Plaintiff Tudor did not attempt to evade arrest by flight.

201. That Defendant Lieutenant Bappert's use of force against Tudor was not objectively reasonable in light of the facts and circumstances and therefore was excessive.

202. That Defendant Lieutenant Bappert's use of excessive force in the unlawful arrest of Plaintiff Tudor violated Tudor's rights under the 4th and 14th Amendments of the U.S. Constitution to be free from unreasonable seizure.

203. That as a direct and proximate result of Defendant Lieutenant Bappert's use of excessive force in the unlawful arrest of Plaintiff Tudor, Tudor suffered physical injuries including,

40

but not limited to, a sprained left wrist, sprained lumbar spine, bruising to the upper arms, and bruising to the right knee and thigh.

204. That as a direct and proximate result of Defendant Lieutenant Bappert's use of excessive force in the unlawful arrest of Plaintiff Tudor, Tudor suffered significantly from triggers to her P.T.S.D., has been prescribed additional prescription medications and has had dosages increased on her existing prescriptions, has been unable to sleep through the night and is only able to periodically nap thorough the day and night to the detriment of her physical and psychological health, has suffered increased irritability, anxiety, depression and disruption of her normal activities.

205. That as a result of the conduct of Defendant Lieutenant Bappert, Plaintiff Tudor has endured past pain, suffering and disability and will likely endure future pain, suffering and disability; she has incurred past medical expenses and will likely incur future medical future medical expenses all to her damages in an amount to be determined at trial.

206. That the conduct of the Defendant Lieutenant Bappert was unlawful, extreme, malicious, outrageous, and/or intentional, displayed a reckless or callous indifference toward Plaintiff Tudor's constitutionally protected right to be free from unreasonable seizure such that punitive damages are warranted.

207. That Defendant Village is liable pursuant to Wis. Stat. § 895.46, for payment of any judgment entered against the individual police officer employee Defendant Lieutenant Bappert, because said Defendant was acting within the scope of his employment and under color of state law when he employed excessive force in the unlawful arrest of Plaintiff Tudor.

41

*Unlawful Destruction of Private Property*

208. Plaintiff Tudor re-alleges the allegations in paragraphs 1 through 207 against Defendants Village, Lieutenant Bappert, Officer Sowa, Jurewicz, and DeLuca above as though fully stated and incorporated herein.

209. That at all times relevant hereto, the Defendant Village was a person for the purposes of 42 U.S.C. §1983. That at all times relevant hereto, Defendants Lieutenant Bappert, Officer Sowa, Jurewicz, and DeLuca were "persons" for purposes of 42 U.S.C. §1983, and acted under color of law to deprive Plaintiff Tudor of her constitutional and civil rights.

210. That throughout August 2021, Defendant DeLuca communicated with Defendants Lieutenant Bappert and Jurewicz to recommend that Defendants Nettleton and Williams take civil action regarding any alleged boundary line dispute and that they could face civil liability for removing Plaintiff Tudor's fence without taking such action, but he did nothing to ensure that civil action was pursued prior to the unlawful actions taken by the Village employees regarding Plaintiff Tudor's fences.

211. That throughout August 2021, Defendants Lieutenant Bappert, Jurewicz, and DeLuca communicated regarding Defendants Nettleton's and Williams' desire to have Defendant Village take action against Plaintiff Tudor to have her fences removed without incurring the time and expense of ordering surveys, filing plats of surveys, and obtaining court orders determining the property boundary lines. At no time did any of these Defendants ask Attorney Gray to assist in resolving this issue lawfully.

212. That, upon information and belief, at no time subsequent to Plaintiff Tudor's purchase of her home and prior to the issuance of trespassing and zoning citations in August and September, 2021, did any of the Defendants to this action have a plat of survey properly

recorded to address the boundary lines between Tudor and Defendants Nettleton and Williams.

213. That no court order was ever sought, nor civil action commenced, by any Defendant to this action to resolve any claimed boundary line dispute between Defendants Nettleton or Williams and Plaintiff Tudor.

214. That, upon information and belief, Plaintiff Tudor's survey, prepared and filed in September 2020, represents the only survey recorded by any party to this action between the time that Plaintiff Tudor purchased her home and the issuance of her most recent citation for zoning violations on September 22, 2021.

215. That Defendant Lieutenant Bappert worked closely through email and otherwise with Defendant Nettleton, to schedule a time to have Plaintiff Tudor's fence forcibly removed from the west side of her property without court order and without notice to Plaintiff Tudor.

216. That on September 13, 2021, Defendant Lieutenant Bappert unlawfully supervised the removal and destruction of Plaintiff Tudor's fence by Defendant Nettleton.

217. That Defendant Lieutenant Bappert provided instruction to Defendant Nettelton on where and how to cut Plaintiff Tudor's fence and that such instruction was provided with reference to a copy of Plaintiff Tudor's plat of survey conducted and recorded in September 2020.

218. That Defendant Lieutenant Bappert is not a licensed certified land surveyor and has no training in the preparation, reading, or interpretation of surveys.

219. That in preparation for the unlawful removal of the fence and destruction of Plaintiff Tudor's property, Defendant Lieutenant Bappert did instruct Defendant Nettleton as to which portions of the fence Nettleton would be allowed to remove, and such instruction

43

did violate Tudor's right under the 4th and 14th Amendments of the U.S. Constitution to be free from unreasonable seizure.

220. That as a direct and proximate result of Defendant Lieutenant Bappert's supervision and instruction for the unlawful destruction of Plaintiff Tudor's property and Defendants Jurewicz's, Officer Sowa's, DeLuca's, and the Village's failure to intervene in such unlawful destruction, Tudor's yard, fence, and construction materials were damaged by Defendant Nettleton.

221. That as a direct and proximate result of Defendant Lieutenant Bappert's supervision and instruction for the unlawful destruction of Plaintiff Tudor's property and Defendants Jurewicz's, Officer Sowa's, and DeLuca's failure to intervene in such unlawful destruction, Tudor suffered significant psychological injuries.

222. That as a result of the unlawful conduct of Defendants Village, Lieutenant Bappert, and Officer Sowa, Jurewicz, and DeLuca, Plaintiff Tudor has endured pecuniary loss, past pain, suffering and disability and will likely endure future pain, suffering and disability; she has incurred past medical expenses and will likely incur future medical future medical expenses all to her damages in an amount to be determined at trial.

223. That the actions and omissions of the Defendants Village, Lieutenant Bappert, Officer Sowa, Jurewicz, and DeLuca were unlawful, extreme, malicious, outrageous, and/or intentional, displayed a reckless or callous indifference toward Plaintiff Tudor's constitutionally protected right to be free from unreasonable seizure such that punitive damages are warranted.

224. That Defendant Village is liable pursuant to Wis. Stat. § 895.46, for payment of any judgment entered against the individual employees Defendants Lieutenant Bappert, Officer

Sowa, Jurewicz, and DeLuca because said Defendants were acting within the scope of their employment and under color of state law when they contributed by acts and omissions to the unlawful destruction of Plaintiff Tudor's property.

*Aiding and Abetting the Unlawful Destruction of Private Property*

225. Plaintiff Tudor re-alleges the allegations in paragraphs 1 through 224 against Defendants Village, Lieutenant Bappert, and Officer Sowa above as though fully stated and incorporated herein.

226. That at all times relevant hereto, the Defendant Village was a person for the purposes of 42 U.S.C. §1983. That at all times relevant hereto, Defendants Lieutenant Bappert and Officer Sowa, were "persons" for purposes of 42 U.S.C. §1983, and acted under color of law to deprive Plaintiff Tudor of her constitutional and civil rights.

227. That Defendants Lieutenant Bappert and Officer Sowa, as law enforcement officers, had a duty to keep the peace, enforce the law, and prevent the unlawful deprivation of property by one citizen upon another.

228. That on September 13, 2021, Defendants Lieutenant Bappert and Officer Sowa, failed in the performance of their duties to keep the peace, enforce the law, and prevent the unlawful deprivation of property by one citizen upon another, by allowing, authorizing, and directing the unlawful destruction of Plaintiff Tudor's property.

229. That no court order was ever sought by any Defendant to this action to resolve any boundary line dispute between Defendant Nettleton and Plaintiff Tudor.

230. That on September 13, 2021, Defendants Lieutenant Bappert and Officer Sowa sanctioned, assisted with, and/or observed the unlawful destruction Plaintiff Tudor's private property by Defendant Nettleton.

45

231. That the destruction of Plaintiff Tudor's fence by Defendant Nettleton was a crime contrary to Wis. Stat. § 943.01(1).

232. That on September 13, 2021, Defendants Lieutenant Bappert and Officer Sowa did not intervene to stop the unlawful destruction Plaintiff Tudor's private property by Defendant Nettleton and in fact provided material assistance and direction, and such instruction did violate Tudor's right under the 4th and 14th Amendments of the U.S. Constitution to be free from unreasonable seizure.

233. That Defendants Lieutenant Bappert's and Officer Sowa's failures to intervene to stop the unlawful destruction Plaintiff Tudor's private property by Defendant Nettleton and their actions in providing supervision and direction did assist Defendant Nettleton in the commission of a crime in violation of Wis. Stat. § 939.05.

234. That as a direct and proximate result of Defendants Lieutenant Bappert's and Officer Sowa's failure to intervene to stop the commission of a crime by Defendant Nettleton and their supervision and instruction for the unlawful destruction of Plaintiff Tudor's property, her yard, fence, and construction materials were damaged by Defendant Nettleton.

235. That as a direct and proximate result of Defendants Lieutenant Bappert's and Officer Sowa's failures to intervene to stop the commission of a crime by Defendant Nettleton and their supervision and instruction for the unlawful destruction of Plaintiff Tudor's property, Tudor suffered significant psychological injuries and financial injuries.

236. That a result of the unlawful conduct of Defendants Lieutenant Bappert, and Officer Sowa, Plaintiff Tudor has endured pecuniary loss, past pain, suffering and disability and will likely endure future pain, suffering and disability; she has incurred past medical expenses

and will likely incur future medical future medical expenses all to her damages in an amount to be determined at trial.

237. That the conduct of the Defendants Lieutenant Bappert and Officer Sowa was unlawful, extreme, malicious, outrageous, and/or intentional, displayed a reckless or callous indifference toward Plaintiff Tudor's property and her constitutionally protected right to be free from unreasonable seizure such that punitive damages are warranted.

238. That Defendant Village is liable pursuant to Wis. Stat. § 895.46, for payment of any judgment entered against the individual police officer employee Defendants Lieutenant Bappert and Officer Sowa because said Defendants were acting within the scope of their employment and under color of state law when they sanctioned, assisted with, and/or observed the unlawful destruction Plaintiff Tudor's private property by Defendant Nettleton.

### Excessive Fines

239. Plaintiff Tudor re-alleges the allegations in paragraphs 1 through 238 against Defendants Village, Lieutenant Bappert, Officer Holtz, and Officer Goldsworthy above as though fully stated and incorporated herein.

240. That at all times relevant hereto, the Defendant Village was a person for the purposes of 42 U.S.C. §1983. That at all times relevant hereto, Defendants Lieutenant Bappert, Officer Holtz, and Officer Goldsworthy, were "persons" for purposes of 42 U.S.C. §1983, and acted under color of law to deprive Plaintiff Tudor of her constitutional and civil rights.

241. That since moving to the Village of Genoa City in 2018, Plaintiff Tudor, has been issued over 100 legally unfounded citations by Defendants Lieutenant Bappert, Officer Holtz, and Officer Goldsworthy, with no oversight or prohibition by the Village.

47

242. That total fines for the citations issued to Plaintiff Tudor by Defendant Village total at least $81,492.50.

243. That, based upon the contents of letters received from various officers of the Genoa City Police Department, the citations were issued for the purpose punishing Plaintiff Tudor for refusing to comply with the unlawful and legally unfounded demands of Defendant Village, DeLuca, and its police officers regarding her fences, her interactions with her neighbors, and a vehicle that was not registered to her, and not issued for violating the Village's Code of Ordinances, since no such violations existed.

244. That at least three dozen citations were issued without citation to any specific ordinance in violation of the standard required by *Fink v. City of Milwaukee*, 17 Wis. 26, 28, 1863 WL 1096 (1863), were issued all on the same day, without probable cause claiming they were continuing violations, or were issued based on unsubstantiated and unfounded legal theories, and many were subsequently dismissed on Plaintiff Tudor's motions.

245. That as of the date of the filing of this complaint, 25 zoning citation cases against Plaintiff Tudor remain open, for citations issued between August 3, and September 22, 2021. That these citations were issued, and later amended by the Village through Attorneys Gray and Harvey, based on the alleged location of Plaintiff Tudor's fence, which remains subject to an alleged unresolved boundary dispute, and carry total forfeitures of $25,000.00.

246. That as of the date of the filing of this complaint, 42 trespassing citation cases against Plaintiff Tudor, issued between August 3, and September 22, 2021, have been dismissed with prejudice. That prior to dismissal, these citations carried potential total forfeitures of $42,000.00.

48

247. That the forfeitures imposed for the zoning violation citations are grossly disproportional to the gravity of the charged offenses.

248. That, upon information and belief, fines imposed on similarly situated defendants in the Village of Genoa City have been significantly lower, and similarly situated defendants have not been cited daily and/or multiple times per day.

249. That there is no harm from Plaintiff Tudor's alleged zoning violations as there is no court order resolving the any boundary line dispute and establishing a violated zoning ordinance.

250. That there is no harm from Plaintiff Tudor's alleged trespassing as there is no court order resolving the boundary line dispute and establishing a violated property right.

251. That there is no harm from Plaintiff Tudor's alleged street storage of a junked vehicle as she was not the registered owner of the Ford Explorer for which she was issued citations on June 12 and 22, 2021.

252. That the numerous citations were issued for the purpose punishing Plaintiff Tudor for refusing to comply with unlawful demands of the Defendant Village, its police officers, and DeLuca regarding her fences, her interactions with her neighbors, and a vehicle that was not registered to her, and not issued for violating the Village's Code of Ordinances, since no such violations existed. That these citations were issued with excessive forfeiture amounts as a form of cohesion, violating Tudor's rights under the 8th Amendment to be free from the imposition of excessive fines, thereby entitling Plaintiff Tudor to both compensatory and punitive damages.

253. That a result of the conduct of Defendants Village, Lieutenant Bappert, Officer Holtz, and Officer Goldsworthy, Plaintiff Tudor has endured and will endure in the future, pecuniary loss.

49

254.   That Defendant Village is liable pursuant to Wis. Stat. § 895.46, for payment of any judgment entered against the individual police officer employee Defendants Lieutenant Bappert, Officer Holtz, and Officer Goldsworthy, all of who issued the groundless citations, because said Defendants were acting within the scope of their employment and under color of state law when they excessively issued citations as forms of coercion and punishment for Plaintiff Tudor's refusal to comply with unlawful demands of the Defendant Village, its police officers, and DeLuca regarding her fences, her interactions with her neighbors, and a vehicle that was not registered to her, and not as punishment for violating the Village's Code of Ordinances.

### *Denial of Due Process*

255.   Plaintiff Tudor re-alleges the allegations in paragraphs 1 through 254 against Defendants Village, Village Board, Zoning Department, Lieutenant Bappert, Antti, Parker, DeLuca, Border, Jurewicz, and Attorney Gray above as though fully stated and incorporated herein.

256.   That at all times relevant hereto, the Defendants Village, Village Board, Zoning Department were "persons" for the purposes of 42 U.S.C. §1983. That at all times relevant hereto, Defendants Lieutenant Bappert, Antti, Parker, DeLuca, Border, Jurewicz, and Attorney Gray were "persons" for purposes of 42 U.S.C. §1983 and acted under color of law to deprive Plaintiff Tudor of her constitutional and civil rights.

257.   That Plaintiff Tudor has been issued dozens of legally unfounded zoning violation citations based on the composition and the location of her fences.

258.   That under § 310-11 (C), of the Genoa City Code of Ordinances the "Zoning Administrator shall . . . investigate all complaints, give notice of violations and enforce the provisions of this chapter."

50

259. That under § 310-69 B.(6)(e) of the Genoa City Code of Ordinances the Zoning Department, through the Administrator, "[s]hall enforce this Ordinance with the assistance of the Village Attorney."

260. That, upon information and belief, at no time prior to the issuance of the zoning citations to Plaintiff Tudor, did either Defendant Zoning Administrator Ellis Border, Defendant Zoning Administrator James DeLuca, nor Defendant Village Attorney Linda Gray, provide notice of violation or investigate the complaints of Defendants Nettleton and Williams, prior to the issuance of these citations, as required by Chapter 310 of the Village of Genoa City Code of Ordinances.

261. That, upon information and belief, at no point prior to the issuance of the zoning citations to Plaintiff Tudor did either Defendant Zoning Administrator Ellis Border, Defendant Zoning Administrator James DeLuca, nor Defendant Village Attorney Linda Gray participate in the enforcement efforts undertaken by Defendant Lieutenant Bappert when he issued the citations to Plaintiff Tudor.

262. That the zoning code does not authorize Defendant Lieutenant Bappert to investigate complaints, give notice of violations, or enforce the zoning provisions of the Village of Genoa City Code of Ordinances.

263. That there was no notice of the alleged offenses provided to Plaintiff Tudor, sufficient to meet the requirements of the Village of Genoa City Code of Ordinances.

264. That Defendant Lieutenant Bappert's unlawful, unauthorized, and unilateral action against Plaintiff Tudor to enforce the zoning provisions of the Village of Genoa City Code of Ordinances was contrary to the enforcement procedures contained in the Village's

51

Ordinances. That such actions led to a deprivation of Plaintiff Tudor's rights of due process in violation under the 14th Amendment.

265. That, upon information and belief, on or about August 1-3, 2021, emails exchanged between Defendants DeLuca, Jurewicz, and Lieutenant Bappert show that DeLuca and Jurewicz were aware that Lieutenant Bappert was going to take unilateral, unauthorized action and did nothing to prevent his unlawful enforcement actions that were contrary to the Village of Genoa City Code of Ordinances. That such failure to intervene led to a deprivation of Plaintiff Tudor's rights of due process in violation under the 14th Amendment.

266. That the failures of Defendants DeLuca, Border, and Attorney Gray, to comply with the notice requirements and enforcement procedures set forth in the Village's ordinances, deprived Tudor of her rights of due process in violation of the 14th Amendment.

267. That Defendants Village, Village Board, Zoning Department, Antti, Parker, DeLuca, and Attorney Gray had a duty to exercise oversight authority over all enforcement actions related to the zoning provisions of the Village of Genoa City Code of Ordinances.

268. That Defendants Village, Village Board, Zoning Department, Antti, Parker, DeLuca, Border, and Attorney Gray had a duty to exercise oversight authority over all enforcement actions related to the zoning provisions of the Village of Genoa City Code of Ordinances. by restraining Defendant Lieutenant Bappert from taking unlawful, unauthorized, and unilateral action against Plaintiff Tudor.

269. That Defendants Village, Village Board, Zoning Department, Antti, Parker, DeLuca, Border, and Attorney Gray failed in their duties to exercise oversight authority over enforcement efforts to enforce the zoning provisions of the Village of Genoa City Code of

Ordinances by not restraining Defendant Lieutenant Bappert from taking unlawful, unauthorized, and unilateral action against Plaintiff Tudor and by failing to fill the code enforcement officer position and/or by carrying out the duties of that position without proper authority or oversight. That such failures led to a deprivation of Plaintiff Tudor's rights of due process in violation under the 14th Amendment.

270. That as a direct and proximate result of Defendants Village, Village Board, Zoning Department, Antti, Parker, DeLuca, Border, and Attorney Gray failures in their duties to exercise oversight authority over all enforcement actions related to the zoning provisions of the Village of Genoa City Code of Ordinances by not restraining Defendant Lieutenant Bappert from taking unlawful, unauthorized, and unilateral action against Plaintiff Tudor, Tudor has suffered significant physical, psychological and financial injuries.

271. That as a direct and proximate result of the conduct of the Defendants' conduct, Plaintiff Tudor has incurred significant legal fees to defend herself against unfounded citations resulting from the unlawful, unauthorized, and unilateral action taken by Defendant Lieutenant Bappert.

272. That a result of the conduct of Defendants Village, Village Board, Zoning Department, Lieutenant Bappert, Antti, Parker, DeLuca, Border, Jurewicz, and Attorney Gray, Plaintiff Tudor has endured pecuniary loss, past pain, suffering and disability and will likely endure future pain, suffering and disability; she has incurred past medical expenses and will likely incur future medical expenses all to her damages in an amount to be determined at trial.

273. That Defendant Lieutenant Bappert's unlawful, unauthorized, and unilateral action against Plaintiff Tudor to enforce the zoning provisions of the Village of Genoa City Code of Ordinances and Defendants Village, Village Board, Zoning Department, Antti, Parker,

53

DeLuca, Border, Jurewicz, and Attorney Gray failures to restrain Lieutenant Bappert from taking such action demonstrates deliberate indifference toward Plaintiff Tudor's constitutionally protected rights of due process, violating Tudor's rights under the 14th Amendment and entitles Plaintiff Tudor to compensatory and punitive damages.

274. That Defendant Village is liable pursuant to Wis. Stat. § 895.46, for payment of any judgment entered against the individual officials, agents, and employees of the Village of Genoa City, because said Defendants were acting within the scope of their employment and under color of state law when they contributed to the denial of Plaintiff Tudor's constitutionally protected rights of due process, violating her rights under the 14th Amendment.

### *Cruel and Unusual Punishment*

275. Plaintiff Tudor re-alleges the allegations in paragraphs 1 through 274 against Defendants Village, Lieutenant Bappert, and Officer Sowa above as though fully stated and incorporated herein.

276. That at all times relevant hereto, the Defendant Village was a person for the purposes of 42 U.S.C. §1983. That at all times relevant hereto, Defendants Lieutenant Bappert and Officer Sowa, were "persons" for purposes of 42 U.S.C. §1983, and acted under color of law to deprive Plaintiff Tudor of her constitutional and civil rights.

277. That after her arrest on September 13, 2021, Plaintiff Tudor was jailed at the Walworth County Jail.

278. That while jailed, Plaintiff Tudor, was denied adequate dosage of her prescription medications.

54

279. That, upon information and belief, the Walworth County Jail has no records of prescription medication provided to Plaintiff Tudor, relying solely upon video recordings which do not show that Plaintiff Tudor was given her prescribed dosages of her medication.

280. That while jailed, Plaintiff Tudor was placed in a cell that was not properly sanitized and contained fecal matter from a previous prisoner.

281. That, upon information and belief, there are no logs of jail cell maintenance and sanitation to ensure adequately sanitized accommodations.

282. That while jailed, Plaintiff Tudor was suffering from injuries, including a sprained left wrist, sprained lumbar spine, bruising to the upper arms, and bruising to the right knee and thigh, which were caused by Defendant Lieutenant Bappert during her arrest.

283. That while jailed, Plaintiff Tudor was prevented from receiving adequate medical care for these injuries and was forced to seek immediate medical attention after her release from the Walworth County Jail.

284. That the denial of proper prescription medication, unsanitary conditions, and proper medical treatment for her injuries to Plaintiff Tudor while jailed resulted in the denial of the minimally civilized measures of life's necessities entitled to Tudor by the U.S. Constitution in violation of her rights under the Eighth Amendment not to be subjected to cruel or unusual punishment.

285. That the actions of Defendants Lieutenant Bappert and Officer Sowa in arresting Plaintiff Tudor without legal basis caused her to be incarcerated and demonstrated deliberate indifference by Defendants Lieutenant Bappert and Officer Sowa to the safety and well-being of individuals jailed at the Walworth County Jail.

286. That the injuries sustained by Plaintiff Tudor were the direct and proximate result of Defendants' Lieutenant Bappert and Officer Sowa unlawful arrest leading to her jailing.

287. That a result of the conduct of Defendants Village, Lieutenant Bappert, and Officer Sowa, Plaintiff Tudor has endured past pain, suffering and disability and will likely endure future pain, suffering and disability; she has incurred past medical expenses and will likely incur future medical future medical expenses all to her damages in an amount to be determined at trial.

288. That Defendant Village is liable pursuant to Wis. Stat. § 895.46, for payment of any judgment entered against the individual officers because said Defendants were acting within the scope of their employment and under color of state law when they contributed to the denial of Plaintiff Tudor's constitutionally protected rights to be free from cruel and unusual punishment under the 8th Amendment.

*Breach of Duty to Train and Supervise*

289. Plaintiff Tudor re-alleges the allegations in paragraphs 1 through 288 against Defendants Village, Chief Balog, Parker and Antti above as though fully stated and incorporated herein.

290. That at all times relevant hereto, the Defendant Village, was a person for the purposes of 42 U.S.C. §1983. That at all times relevant hereto, Defendants Chief Balog, Parker, and Antti were "persons" for purposes of 42 U.S.C. §1983, and acted under color of law to deprive Plaintiff Tudor of her constitutional and civil rights.

291. That Defendants Village, Chief Balog, Parker, and Antti had a duty to adequately train and/or otherwise supervise police officers regarding enforcement of the Village's ordinances, the role of police officers in resolving civil boundary line disputes between

56

neighbors, providing material support and/or supervising the destruction of private property, the control of one's anger in an interaction with citizens, the circumstances under which a disorderly conduct arrest pursuant to a public interaction with a citizen is appropriate, and the proper application of force pursuant to an arrest under the circumstances alleged herein.

292. That Defendants Village, Chief Balog, Parker, and Antti failed in the performance of their duties to train and supervise the Village's police officers.

293. That the Defendants' Village, Chief Balog, Parker, and Antti failure to have provided appropriate training to Defendants Lieutenant Bappert, Officer Sowa, Officer Holtz, and Officer Goldsworthy, is a cause of the violations of Plaintiff Tudor's constitutional and civil rights by officers of the Genoa City Police Department as alleged herein.

294. That the Defendants Village, Chief Balog, Parker, and Antti made deliberate policy choices by failing to provide the appropriate training and/or supervision of Defendants Lieutenant Bappert, Officer Sowa, Officer Holtz, and Officer Goldsworthy, thus constituting deliberate indifference to the Constitutional rights, civil rights, and private property of Plaintiff Tudor with whom Defendants Lieutenant Bappert, Officer Sowa, Officer Holtz, and Officer Goldsworthy interacted with in the course of their employment as police officers at all times material hereto.

295. That the Defendants' Village, Chief Balog, Parker, and Antti failures to properly train and supervise Defendants Lieutenant Bappert, Officer Sowa, Officer Holtz, and Officer Goldsworthy resulted in their false arrest and excessive use of force against Plaintiff Tudor, the issuance of excessive and legally unfounded citations, harassment, and the destruction of Tudor's private property.

57

296. That as a direct and proximate result of the Defendants' Village and Chief Balog failure to adequately train and supervise their police officers, Plaintiff Tudor suffered significant physical injuries including a sprained left wrist, sprained lumbar spine, bruising to the upper arms, and bruising to the right knee and thigh sustained during her arrest.

297. That as a direct and proximate result of the Defendants Village's and Chief Balog's failure to adequately train and supervise their police officers, Plaintiff Tudor sustained significant psychological injuries.

298. That a result of the conduct of Defendants Village, Lieutenant Bappert, and Officer Sowa, Plaintiff Tudor has endured and will continue endure pecuniary loss, past pain, suffering and disability and will likely endure future pain, suffering and disability; she has incurred past medical expenses and will likely incur future medical expenses all to her damages in an amount to be determined at trial.

299. That the conduct of the Defendants Village and Chief Balog displayed a reckless or callous indifference toward Plaintiff Tudor's rights under the U.S. Constitution and such violation warrants an award of punitive damages.

300. That Defendant Village is liable pursuant to Wis. Stat. § 895.46, for payment of any judgment entered against the individual Defendants Chief Balog, Antti, and Parker, because said Defendants were acting within the scope of their employment and under color of state law when they contributed to the denial of Plaintiff Tudor's constitutionally protected rights.

## CLAIM II
### CAUSE OF ACTION FOR ABUSE OF PROCESS

301. Plaintiff Tudor re-alleges the allegations in paragraphs 1 through 300 against Defendants Village, Attorney Gray, Attorney Harvey, DeLuca, Border, Officer Goldsworthy, Officer Holtz, and Lieutenant Bappert above as though fully stated and incorporated herein.

302. That Defendants Lieutenant Bappert, Officer Holtz, and DeLuca wrote numerous warning letters throughout 2019-2021, many with threatening language, to Plaintiff Tudor to force her into complying with unreasonable and unfounded demands and showing preference to the property interests of Defendants Nettleton and Williams without any basis to do so.

303. That Defendants Lieutenant Bappert, Officer Goldsworthy, and Officer Holtz issued over 100 citations which were not supported by law or fact.

304. That Defendants DeLuca and Border supported the issuance of these unlawful citations and failed in their duties to enforce the zoning code in accordance with the procedures outlined in the Village of Genoa City Code of Ordinances.

305. That Defendants Village, Attorney Gray and Attorney Harvey prosecuted the resulting citations without legal basis, and have referred forfeitures to the Department of Revenue after making threats to have Plaintiff Tudor's house seized.

306. That these letters, the issuance of such citations, and the legal proceedings that followed, were intended to force Plaintiff Tudor to comply with unreasonable, unfounded, and legally unsubstantiated demands regarding her fences, her interactions with her neighbors, and a vehicle that was not registered to her.

307. That forcing such compliance is incompatible with the purposes for which the processes of giving warning notices, issuing citations, and commencing civil forfeiture actions were designed.

59

308.	That the misuse of the citation process by Defendants Lieutenant Bappert, Officer Holtz, and Officer Goldsworthy was leveraged as legal and financial pressure on Plaintiff Tudor so as to harass her into removing her fence and complying with other unfounded demands, without legal basis.

309.	That the use of legal processes by Defendants Village, Attorney Gray, and Attorney Harvey against Plaintiff Tudor with bad motive and primarily to accomplish a purpose for which the processes were not designed is an abuse of process.

310.	That as a direct and proximate result of Defendants' Village, Attorney Gray, Attorney Harvey, DeLuca, Border, Officer Goldsworthy, Officer Holtz, and Lieutenant Bappert abuse of process, Plaintiff Tudor suffered significant psychological injuries, including but not limited to, exacerbation of her anxiety and emotional distress. That as a result of Defendants' abuse of process, Tudor has suffered significant financial injury from the resultant prosecutions, forfeitures, and legal fees.

311.	That a result of the conduct of Defendants Village, Attorney Gray, Attorney Harvey, DeLuca, Border, Officer Goldsworthy, Officer Holtz, and Lieutenant Bappert, Plaintiff Tudor has endured and will continue endure pecuniary loss, past pain, suffering and disability and will likely endure future pain, suffering and disability; she has incurred past medical expenses and will likely incur future medical expenses all to her damages in an amount to be determined at trial.

312.	That the abuse of process by Defendants Village, Attorney Gray, Attorney Harvey, Officer Goldsworthy, Officer Holtz, and Lieutenant Bappert against Plaintiff Tudor demonstrates a reckless disregard or deliberate indifference towards Tudor's financial, mental, and physical well-being such that punitive damages are warranted.

### *CLAIM III*
### CAUSE OF ACTION FOR MALICIOUS PROSECUTION

313.  Plaintiff Tudor re-alleges the allegations in paragraphs 1 through 312 above against though Defendants Village, Attorney Gray, and Attorney Harvey as though fully stated and incorporated herein.

314.  That 42 separate civil forfeiture actions against Plaintiff Tudor were filed by the Defendant Village for alleged trespassing and by 25 zoning citations.

315.  That the Defendant Village maintained these 42 trespass and 25 zoning actions at the by insistence of Defendants Attorney Gray and Attorney Harvey.

316.  That all 42 proceedings were terminated upon motion in Plaintiff Tudor's favor, but the 25 zoning proceedings continue to be prosecuted.

317.  That all citations related to Plaintiff's fence, including the 42 trespassing citations which were dismissed by the Court, were issued without the necessary probable cause to institute a proceeding to prosecute for civil forfeiture, as there was no Court order resolving any lot line dispute and a fence is not a person who may not trespass under Wis. Stat. § 943.13(1m).

318.  That such prosecutions were intentionally continued by Defendants Attorney Gray and Attorney Harvey who knew or should have known that there was no Court order resolving any lot line dispute and a fence is not a person who may not trespass under Wis. Stat. § 943.13(1m).

319.  That the successful defense of 42 citations worth $42,000 in total, which were decided in Tudor's favor and the 25 continuing zoning proceedings, has caused and will cause, Plaintiff Tudor to incur substantial time, energy, costs, and attorney's fees in her defense.

320.  That each prosecution brought by the Village, by Defendants Attorney Gray and Attorney Harvey, was intended to achieve the aim of forcing Plaintiff Tudor to comply with

unreasonable, unfounded, and legally unsubstantiated demands regarding her fences, her interactions with her neighbors, and a vehicle that not registered to her, and that such intention to issue trespassing citations based on the alleged location of her fences was malicious.

321. That the defense of these malicious prosecutions, given the potential penalties and ramifications, has caused and continues to cause, tremendous emotional and psychological injury to Plaintiff Tudor.

322. That a result of the conduct of Defendants Village, Attorney Gray and Attorney Harvey, Plaintiff Tudor has endured and will continue endure pecuniary loss, past pain, suffering and disability and will likely endure future pain, suffering and disability; she has incurred past medical expenses and will likely incur future medical future medical expenses all to her damages in an amount to be determined at trial.

323. That the malicious prosecution of 42 separate unfounded cases, based on citations which lacked probable cause and which were dismissed on motion, constitute 42 separate acts of malicious prosecution, along with the 25 separate and ongoing zoning cases, for which punitive damages are warranted.

## CLAIM IV
## CAUSE OF ACTION FOR THE UNLAWFUL DESTRUCTION OF PROPERTY BY DEFENDANT NETTLETON

324. Plaintiff Tudor re-alleges the allegations in paragraphs 1 through 323 against Defendant Nettleton above as though fully stated and incorporated herein.

325. That at no time subsequent to Tudor's purchase of her home and prior to the destruction of her fence on September 13, 2021, did Defendant Nettleton have a survey conducted and

properly record a plat of survey regarding property at 530 Freeman Street, Genoa City, WI 53128.

326. That no court order was ever sought by Defendant Nettleton to resolve any boundary line disputes between himself and Plaintiff Tudor.

327. That Plaintiff Tudor's survey, prepared and filed in September 2020, did not reflect the location of her fence on September 13, 2021, as it was moved in early August 2021.

328. That Defendant Nettleton worked closely with Defendant Lieutenant Bappert to have Plaintiff Tudor's fence forcibly removed from the west side of her property without legal authority.

329. That on September 13, 2021, Defendant Nettleton did remove and destroy Plaintiff Tudor's fence, and such destruction was unlawful without a court order resolving the boundary dispute and such unlawful action without notice and court order was a cause of her arrest. That Defendant Nettleton intentionally and unlawfully damaged Plaintiff Tudor's fence, yard, and construction materials causing financial injury to Tudor. That the cost of replacement for such items, including labor is $2,700.00.

330. That a result of the unlawful conduct of Defendant Nettleton, Plaintiff Tudor has endured and will continue endure pecuniary loss, past emotional pain, suffering and disability and will likely endure future emotional pain, suffering and disability; she has incurred past medical expenses and will likely incur future medical expenses all to her damages in an amount to be determined at trial.

331. That Defendant Nettleton's intentional conduct in unlawfully removing and destroying Plaintiff Tudor's property displayed a reckless or callous indifference toward her private

property and contempt for the proper civil remedies for resolving private-property boundary-line disputes such that both compensatory and punitive damages are warranted.

## CLAIM V
## CAUSE OF ACTION FOR ABUSE OF PROCESS AGAINST DEFENDANTS WILLIAMS AND NETTLETON

332. Plaintiff Tudor re-alleges the allegations in paragraphs 1 through 331 against Defendants Nettleton and Williams above as though fully stated and incorporated herein.

333. That Defendants Nettleton and Williams engaged in a pattern of behavior that involved using Genoa City Police and other legal processes to harass Plaintiff Tudor into complying with their unfounded demands regarding alleged boundary-line disputes and fence composition.

334. That Defendant Nettleton made multiple, legally unfounded, complaints to Genoa City Police which caused civil forfeiture actions to be brought against Plaintiff Tudor, and worked with Defendant Lieutenant Bappert to unlawfully remove Plaintiff Tudor's fence, without a court order, which resulted in Tudor being unlawfully arrested.

335. That Defendant Williams made multiple, legally unfounded, complaints to Genoa City Police which caused civil forfeiture actions to be brought against Plaintiff Tudor and commenced an unsuccessful civil action against Tudor seeking a restraining order, which was dismissed.

336. That Defendants Nettleton and Williams worked with various Village officials, including Defendants Jurewicz, DeLuca, and Lieutenant Bappert, for the express purpose of having the Village resolve their respective property disputes with Plaintiff Tudor. That both Defendants Nettleton and Williams were warned by DeLuca they could face legal action if they removed fences without court order. That both Defendants Nettleton and Williams

64

encouraged Village officials to take action without a court order and without commencing a civil action against Tudor. That both Defendants Nettleton and Williams wrote emails and other communications to officials including Defendants Jurewicz, DeLuca, and Lieutenant Bappert, expressing their desire to have the Village remove the fences, including asking for a raze order, so as to spare them the time and expense of having their own surveys conducted and recorded, having to take proper civil action against Tudor to resolve their boundary disputes, and having to obtain a court order to resolve their alleged disputes.

337. That Defendant Williams used her position as a member of the Planning Commission and relationships with local officials to seek unwarranted enforcement action against Plaintiff Tudor and to have the Village's Code of Ordinances amended to restrict the use of the materials and construction methods employed by Tudor for her decorative fence constructed of vintage doors.

338. That the Planning Commission acquiesced to Williams's unlawful demand and revised the fence ordinance to reflect Williams' intent and purpose without due regard for Tudor and other Village residents.

339. That the use of legal processes by Defendants Nettleton and Williams against Plaintiff Tudor was with bad motive and had a purpose other than that which the processes were designed to accomplish.

340. That the misuse of legal processes and unlawful circumvention of the proper civil process for resolving boundary disputes constitutes an abuse of process by Defendants Nettleton and Williams, as they subsequently misused the processes for to accomplish a purpose other that that which they were designed to accomplish.

65

341.    That the misuse of the processes placed sufficient legal and financial pressure on Plaintiff Tudor so as to harass her to remove her fences without legal basis, the need for legal representation, and led to the issuance of legally unfounded citations and ultimately the unlawful arrest of Tudor.

342.    That a result of the abuse of process by Defendants Nettleton and Williams, Plaintiff Tudor has endured and will continue endure pecuniary loss, past emotional pain, suffering and disability and will likely endure future emotional pain, suffering and disability; she has incurred past medical expenses and will likely incur future medical expenses all to her damages in an amount to be determined at trial.

343.    That as a result of her injuries, Tudor is expected to continue suffering damages in the form of attorney's fees and costs as well as the costs to repair and replace her fence.

344.    That the abuse of process by Defendants Nettleton and Williams demonstrates a reckless disregard or deliberate indifference towards Tudor's financial, mental, and physical well-being such that punitive damages are warranted.

## CLAIM VI
## NEGLIENT PROSECUTION

345.    Plaintiff Tudor re-alleges the allegations against Defendants Village, Lieutenant Bappert, Attorney Gray, Attorney Harvey, Nettleton, and Williams in paragraphs 1 through 344 above, as though fully stated and incorporated herein.

346.    That Defendants Nettleton and Williams asked Defendant Bappert to take enforcement action against Plaintiff Tudor by issuing citations based upon the alleged location of her fence.

66

347. That Defendants Nettleton and Williams knew that there was no Court order resolving any lot line dispute and that neither of them recorded a survey showing that Plaintiff Tudor's fence was on their property.

348. That Defendant Lieutenant Bappert did issue at least 67 citations to Plaintiff Tudor.

349. That all citations related to Plaintiff's fence including the 42 trespassing citations which were dismissed by the Court, were issued without the necessary probable cause to institute a proceeding to prosecute for civil forfeiture, as there was no Court order resolving any lot line dispute, there is no survey showing that Plaintiff Tudor's fence was not compliant with § 310-69 B.(7)(a) of the Village of Genoa City Code of Ordinances as alleged in the amended zoning citations, and a fence is not a person who may not trespass under Wis. Stat. § 943.13(1m).

350. That such prosecutions were brought and continued knowingly by Defendants Attorney Gray and Attorney Harvey, representing Defendant Village, who knew or should have known that there was no Court order resolving any lot line dispute, there was no survey showing that Plaintiff Tudor's fence is not compliant with § 310-69 B.(7)(a) of the Village of Genoa City Code of Ordinances as alleged in the amended zoning citations, and a fence is not a person who may not trespass under Wis. Stat. § 943.13(1m).

351. That each prosecution was brought or maintained by the Defendants without disregard for the facts related to the underlying citations. That bringing and maintaining such prosecutions was negligent.

352. That as a direct and proximate result of having to defend herself against these negligently brought and maintained prosecutions, given the potential penalties and cost of defense,

Defendants Gray and Harvey caused tremendous emotional and psychological stress to Plaintiff Tudor and resulted in extensive attorney's fees and costs.

353. That a result of the negligent conduct of Defendants Village, Lieutenant Bappert, Attorney Gray, Attorney Harvey, Nettleton, and Williams, Plaintiff Tudor has endured and will continue endure pecuniary loss, past emotional pain, suffering and disability and will likely endure future emotional pain, suffering and disability; she has incurred past medical expenses and will likely incur future medical expenses all to her damages in an amount to be determined at trial.

## CLAIM VII
## CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

354. Plaintiff Tudor re-alleges the allegations in paragraphs 1 through 353 against Defendants Village, Chief Balog, Lieutenant Bappert, Officer Holtz, Attorney Gray, Attorney Harvey, Nettleton, and Williams above as though fully stated and incorporated herein.

355. That Defendants Village, Chief Balog, Lieutenant Bappert, Officer Holtz, Attorney Gray, Attorney Harvey, Nettleton, and Williams, engaged in a pattern of intentionally harassing behavior, designed to force Plaintiff Tudor into complying with inappropriate and legally unfounded demands made by the Village, its police officers, and by her neighbors to inflict emotional distress upon Tudor for resisting such demands.

356. That Defendant Chief Balog engaged in a pattern of conduct that harassed and intimidated Plaintiff Tudor, including but not limited to, writing letters with threatening language designed to force Plaintiff into complying with unreasonable and legally unfounded demands regarding her fences, Christmas decorations, and vehicles not registered to her, and by implicitly consenting to the orders of Defendant Lieutenant Bappert, that Plaintiff

68

was to be arrested for any reason as a punishment for failing to comply with previous, unrelated demands.

357. That Village of Genoa City police vehicles frequently drive by Plaintiff Tudor's home, operate their lights and sirens in front of her home, and then turn them off after passing.

358. That Defendant Lieutenant Bappert engaged in a pattern of conduct that harassed and intimidated Plaintiff Tudor, including but not limited to, frequently parking on adjacent private property and observing Tudor's residence without apparent cause, issuing an order that that Plaintiff is to be arrested for any reason as a punishment for failing to comply with previous unrelated and legally unfounded demands, writing numerous letters with threatening language designed to force Plaintiff into complying with unreasonable and legally unfounded demands, agreeing to personally serve letters upon Tudor which threatened legal action by a private citizen, issuing nearly 100 citations which were not supported by law, making various verbal threats without legal basis, agreeing to help Tudor's neighbors circumvent the civil court process for boundary disputes, unlawfully arresting Tudor with premeditation and using excessive force during such arrest, assisting with the unlawful destruction of Tudor's private property, and the frequent use unnecessary, verbally abusive, intimidating, harassing, and threatening language toward Tudor.

359. That Defendant Officer Holtz engaged in a pattern of conduct that harassed and intimidated Plaintiff Tudor, including writing numerous letters with threatening language designed to force Tudor into complying with unreasonable and legally unfounded demands, agreeing to personally serve letters upon Tudor which threatened legal action by a private citizen,

69

issuing dozens citations related to a vehicle not registered to Plaintiff Tudor which were not supported by law, and making various verbal threats without legal basis.

360. That Defendants Attorney Gray and Attorney Harvey engaged in a pattern of maliciously prosecuting nearly 100 citations against Plaintiff Tudor, which have been without legal basis, knowing that the litigation is expensive and harassing to Plaintiff Tudor. That Defendants Attorney Gray and Attorney Harvey maintained these actions in support of the Village's harassment intended to intimidate Tudor into complying with unreasonable and legally unfounded demands regarding her fence and maintained such actions in an attempt to impose forfeitures totaling $67,000.00, and further supported the threat to have the Department of Revenue seize Tudor's home.

361. That Defendant Nettleton engaged in an intentional pattern of behavior that harassed Plaintiff Tudor and led to the destruction of her private property and unlawful arrest, including, but not limited to, making excessive unfounded complaints against her to Defendant Village, working with Defendant Lieutenant Bappert to unlawfully and forcibly destroy her fence, and posting harassing signs designed to intimidate and were related to threats to seize Plaintiff Tudor's home for unpaid forfeitures.

362. That Defendant Williams engaged in a pattern of behavior that harassed Plaintiff Tudor, and led to the invasion of her privacy and the unfounded removal of her fence, including, but not limited to, making excessive unfounded complaints against her to Defendants, the Village and the Police Department, unreasonably and unnecessarily, summoning the police to Plaintiff's home on such numerous occasions as to cause a nuisance citation to be issued to Plaintiff, placing cameras aimed at Plaintiff's yard and the rear and side windows of her

70

home, verbally abusing Plaintiff, throwing glass and other debris onto Plaintiff's property, harassing Plaintiff's dogs, and filing an unfounded injunction against her.

363. That Defendants Lieutenant Bappert and Williams were aware of Plaintiff Tudor's history of posttraumatic stress disorder.

364. That the intentional actions of Defendants Village, Chief Balog, Lieutenant Bappert, Officer Holtz, Attorney Gray, Attorney Harvey, Nettleton, and Williams were designed to cause severe emotional distress through violence, destruction of property, violation of constitutional rights, intimidation, harassment, financial and legal pressure, invasion of privacy, failure to properly enforce the zoning code, approval of the unlawful action of Village employees, and exacerbation of her known mental health issues for the purpose of coercion. That such designed actions were intended to cause emotional distress.

365. That such intentional misconduct by one's neighbors and local government officials caused a complete denial of Plaintiff Tudor's individual dignity as a person and that such intentional denial is extreme and outrageous.

366. That such intentional conduct by each of the Defendants had a substantial effect in causing severe emotional distress to Plaintiff Tudor.

367. That as a direct and proximate result of the intentional actions of Defendants Village, Chief Balog, Lieutenant Bappert, Officer Holtz, Attorney Gray, Attorney Harvey, Nettleton, and Williams made for the purposes of coercion, Plaintiff Tudor suffered severe emotional distress in the form of psychological injuries, including but not limited to, exacerbation of her P.T.S.D., anxiety, claustrophobia, and has become agoraphobic.

368. That such emotional distress was extreme and disabling.

369.     That a result of the intentional conduct of Defendants Village, Chief Balog, Lieutenant

         Bappert, Officer Holtz, Attorney Gray, Attorney Harvey, Nettleton, and Williams, Plaintiff

         Tudor has endured and will continue endure pecuniary loss, past emotional pain, suffering

         and disability and will likely endure future emotional pain, suffering and disability; she has

         incurred past medical expenses and will likely incur future medical future medical

         expenses all to her damages in an amount to be determined at trial.

*CLAIM VIII*
**CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

370.     Plaintiff Tudor re-alleges the allegations in paragraphs 1 through 369 against all named

         defendants as though fully stated and incorporated herein.

371.     That all of the named defendants cumulatively engaged in a pattern of behavior, by their

         acts or omissions, that harassed Plaintiff Tudor, led to the deprivation of her rights under

         both state law and the U.S. Constitution, the destruction of her private property, her

         unlawful arrest, the use of excessive force against her, abuse of process against her, and

         malicious prosecution against her.

372.     That all of the named defendants acted negligently in harassing Plaintiff Tudor, and taking

         actions which led to the deprivation of her rights under both state law and the U.S.

         Constitution, the destruction of her private property, her unlawful arrest, the use of

         excessive force against her, abuse of process against her, and malicious prosecution against

         her.

373.     That the actions constituting the pattern of harassing behavior which led to Plaintiff

         Tudor's injuries and damages, were taken with negligent disregard for Plaintiff Tudor, and

         her emotional and psychological well-being, and caused her severe emotional distress.

72

374.   That the severe emotional distress inflicted upon Plaintiff Tudor, was a highly predictable consequence of the harassing behavior by the Defendants which led to Plaintiff Tudor's injuries, which were taken with negligent disregard for Plaintiff Tudor and her emotional and psychological well-being such that compensatory damages are warranted.

375.   That a result of the negligent conduct, acts, and omissions of all of the named defendants to this action, Plaintiff Tudor has endured and will continue endure pecuniary loss, past emotional pain, suffering and disability and will likely endure future emotional pain, suffering and disability; she has incurred past medical expenses and will likely incur future medical expenses all to her damages in an amount to be determined at trial.

## VI. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, April Lynn Tudor, prays the Court enter judgement against the defendants as follows:

1.   Compensatory and punitive damages;

2.   Pursuant to 42 U.S.C. § 1983 and § 1988 and reasonable attorneys' fees, expenses, and other statutory costs and fees;

3.   Actual attorney's fees and costs for abuse of process, malicious prosecution and intentional infliction of emotional distress; and

4.   Such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff April Lynn Tudor hereby demands a trial by jury of twelve.

Respectfully submitted this 27th day of May, 2022.

**La Fleur Law Office, S.C.**
*Attorneys for April Lynn Tudor, Plaintiff*

Catherine A. La Fleur, SBN: 1000545
Jane F. Carrig, SBN: 1023948
M. Susan Maloney, SBN: 1018484
Nicholas J. Wanic, SBN: 1121263

*Drafted by La Fleur Law Office, S.C.*
313 N. Plankinton Ave., Suite 429
Milwaukee, Wisconsin 53203
Telephone: 414-219-9030
Facsimile: 414-918-4635