# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**APRIL L. TUDOR,**
       **Plaintiff,**

    **v.**                            **Case No. 22-CV-0630**

**VILLAGE OF GENOA CITY, et al.,**
       **Defendant.**

---

## DECISION AND ORDER

Plaintiff April Tudor filed this action against defendants the Village of Genoa City ("the Village"), former Village President Kenneth Parker, current Village President William Antti, former Village Zoning Administrator Ellis Border, current Zoning Administrator James DeLuca, Village Attorney Linda Gray, Village Attorney Steven Harvey, former Village Treasurer Claudia Jurewicz, Village Police Chief Joseph Balog, Village Police Lieutenant Steven Bappert, Village Police Officer Shaun Sowa, Village Police Officer Dieter Holtz, Village Police Officer Kimberly Goldsworthy, William Nettleton, and Sandra Williams. Plaintiff alleges a violation of her constitutional rights under 42 U.S.C. § 1983, as well as several state law claims. This decision resolves the defendants' motions to dismiss.

## I. BACKGROUND

On September 21, 2018, plaintiff purchased a home located at 613 Franklin Street, in the Village of Genoa City, Wisconsin. ECF No. 1, ¶ 34. In August 2019, she installed a decorative fence constructed of vintage doors on the east side of her property near the property of her neighbor, Sandra Williams. *Id.*, ¶ 38. In October 2020, she installed a fence along the west side of her property near the property of her

neighbor, William Nettleton. *Id.*, ¶ 80. Disputes between plaintiff and her neighbors ensued over the fence. These disputes soon included several Village employees as enforcement of the Village's zoning ordinances commenced.

On September 13, 2021, as Nettleton prepared to bulldoze plaintiff's fence that he believed was encroaching on his property, a disagreement ensued. *Id.*, ¶¶ 140–142. Lieutenant Bappert arrested plaintiff for disorderly conduct in violation of Wisconsin Statute § 947.01(1). She was transported to the Walworth County jail, where she spent the night. *Id.*, ¶¶ 143–160. In addition to the disorderly conduct charge, plaintiff was charged with resisting or obstructing an officer in violation of Wisconsin Statute § 946.41(1). She pleaded plead no contest and was found guilty on both charges. *Village of Genoa City vs. April Lynn Tudor*, Walworth County Circuit Court Case No. 2021CM572, *available at* https://wcca.wicourts.gov.[1]

Between August 3, 2021, and September 22, 2021, plaintiff received forty-two citations for trespass to land and twenty-five citations for zoning violations due to her fence being located on her neighbor's property. *Id.*, ¶ 108. The Village commenced separate actions for each citation in the Walworth County Circuit Court. The trespassing citations alleged violations of § 194-1 of the Village of Genoa City Code (hereinafter, "the Village Code"), a municipal provision that adopts the trespass to land statute,

---

[1] I take judicial notice of the state court record in the many Walworth County Circuit Court Cases described in plaintiff's complaint. *See Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012) ("A court may take judicial notice of facts that are (1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned," including "facts readily ascertainable from the public court record and not subject to reasonable dispute.").

Wisconsin Statute § 943.13. In October 2021, plaintiff moved to dismiss all forty-two citations, arguing that § 943.13(1m)(a) did not apply to a fence because the statute only prohibits a person from "[e]nter[ing] any enclosed, cultivated or undeveloped land of another . . . without the express or implied consent of the owner or occupant." The circuit court agreed with plaintiff, noting that she was not trespassing under the statute just because an inanimate object was crossed on to her neighbor's property. The circuit court thus dismissed all the trespassing citations except one, acknowledging that the Village might be able to give a citation for the first day the fence went up, as assumedly a person had gone onto the property to install the fence. But in April 2022, the Village filed a motion to voluntarily dismiss the remaining trespass citation. ECF No. 1, ¶ 125. The twenty-five zoning citations[2] went to trial in February 2023. Plaintiff received a jury trial on ten of the zoning violations and a court trial on the remaining fifteen. Both the jury and the court found plaintiff guilty of all twenty-five zoning violations.

## II. DISCUSSION

To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon

---

[2] Walworth County Circuit Court Case Nos. 2021FO809, 2021FO811, 2021FO812, 2021FO864, 2021FO883, 2021FO887, 2021FO892, 2021FO914, 2021FO922, 2021FO923, 2021FO924, 2021FO936, 2021FO937, 2021FO938, 2021FO973, 2021FO974, 2021FO975, 2021FO976, 2021FO977, 2021FO1027, 2021FO1028, 2021FO1029, 2021FO1030, 2021FO1032, and 2021FO1068.

3

which it rests." *Twombly*, 550 U.S. at 555. In construing plaintiff's complaint, I assume all factual allegations are true but disregard statements that are conclusory. *Iqbal*, 556 U.S. at 678. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## A.   Plaintiff's § 1983 Claims

To state a claim for relief under 42 U.S.C. § 1983, plaintiff must allege that someone deprived her of a right secured by the Constitution or the laws of the United States, and that whoever deprived her of this right was acting under the color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

### 1.   False Arrest

Plaintiff alleges that on September 13, 2021, Bappert and Sowa arrested her for disorderly conduct without probable cause. ECF No. 1, ¶¶ 173–192. A claim of false arrest arises under the Fourth Amendment right to be free from unreasonable seizure. To prevail on a Fourth Amendment false arrest claim, plaintiff must show that there was no probable cause for her arrest. *Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016). "The existence of probable cause to arrest is an absolute defense to any § 1983 claim against a police officer for false arrest." *Abbott v. Sangamon County*, 705 F.3d 706, 713–14 (7th Cir. 2013). Probable cause to arrest exists "when the facts and circumstances that are known to [the officer] reasonably support a belief that the individual has committed, is committing, or is about to commit a crime." *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007).

4

Defendants allege that plaintiff's false arrest claim is barred by *Heck v. Humphrey*, 513 U.S. 477 (1994). Under *Heck*, before a § 1983 plaintiff may recover damages for alleged harm "caused by actions whose unlawfulness would render a conviction or sentence invalid," the plaintiff must first prove that her conviction or sentence has been reversed, expunged, or called into question by the grant of a petition for habeas corpus. *Id.* at 486–87. This rule is intended to prevent "collateral attack on [a] conviction through the vehicle of a civil suit." *Id.* at 484. In determining whether *Heck* applies to plaintiff's false arrest claim, I must analyze the relationship between the claim and the charge on which plaintiff was convicted:

> [T]he district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of [her] conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 487 (emphasis in original). A plaintiff need not prove that any conviction stemming from an incident with the police has been invalidated, only a conviction that cannot be reconciled with her § 1983 claims. *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006).

After plaintiff's arrest on September 13, 2021, she was charged with disorderly conduct in violation of Wisconsin Statute § 947.01(1) and resisting or obstructing an officer in violation of Wisconsin Statute § 946.41(1). *Village of Genoa City vs. Tudor*, Walworth County Circuit Court Case No. 2021CM572. Plaintiff pled no contest to both charges and was adjudged guilty. *Id.* Defendants argue that a judgment in favor of

plaintiff on the false arrest claim would necessarily imply the invalidity of plaintiff's conviction for disorderly conduct and resisting arrest.

Although a false arrest claim does not necessarily imply the invalidity of a conviction, *Heck* applies if the plaintiff's allegations in support of the claim are inconsistent with guilt. *See Mordi v. Zeigler*, 870 F.3d 703, 708 (7th Cir. 2017); *Johnston v. Devries*, No. 21-2679, 2022 WL 476088, at *2 (7th Cir. Feb. 16, 2022), *cert. denied*, 142 S. Ct. 2744 (2022). Here, plaintiff alleges that she "was not engaging in and had not engaged in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct" at the time of her arrest, and thus, Bappert and Sowa lacked probable cause to arrest her. ECF No. 1, ¶¶ 176, 182. However, plaintiff was adjudged guilty of disorderly conduct, which requires a finding that plaintiff had engaged in violent, abusive, indecent, profane, boisterous, unreasonably loud, or otherwise disorderly conduct. *See* Wis. Stat. § 947.01(1). The underlying facts in support of plaintiff's false arrest claim—that she was not engaging in any behavior constituting disorderly conduct under the statute—call into question the validity of her underlying criminal conviction. Such a claim is barred by *Heck*, and I therefore must dismiss plaintiff's false arrest claim.

### 2. Excessive Force

Plaintiff alleges that Bappert used excessive force while arresting her on September 13, 2021. ECF No. 1, ¶¶ 193–207. Defendants argue that because plaintiff was convicted of resisting arrest, the excessive force claim is barred by *Heck*. However, the Seventh Circuit has on more than one occasion held that a plaintiff convicted of resisting arrest can proceed on an excessive force claim to the extent that the facts

6

underlying the claim are not inconsistent with the facts supporting the state court conviction. In *Evans v. Poskon*, 603 F.3d 362 (7th Cir. 2010), the plaintiff filed § 1983 suit alleging that the officers used excessive force during and after his arrest. Though he was convicted of resisting arrest in state court, Evans alleged in federal court that he had offered no resistance and was beaten mercilessly both before and after the defendant officers gained custody of him. The district court granted summary judgment in favor of the defendants, concluding that Evans' claim was barred by *Heck* because his assertion that he did not oppose being taken into custody contradicted the conviction for resisting arrest. The Seventh Circuit reversed, noting that:

> Evans's situation illustrates how a fourth-amendment claim can coexist with a valid conviction. He contends three things: (1) that he did not resist being taken into custody; (2) that the police used excessive force to effect custody; and (3) that the police beat him severely even after reducing him to custody. . . . Proposition (1) is incompatible with his conviction; any proceedings based on this contention must be stayed or dismissed under *Wallace* [*v. Kato*, 549 U.S. 384 (2007)] or *Heck*. But propositions (2) and (3) are entirely consistent with a conviction for resisting arrest.

*Id.* at 364. The court concluded that a plaintiff may proceed on such a claim, but only to the extent that the facts underlying the excessive force claim are not inconsistent with the essential facts supporting the conviction.

The Seventh Circuit later applied the rule from *Evans* in *Helman v. Duhaime*, 742 F.3d 760 (7th Cir. 2014), where the plaintiff filed a § 1983 excessive force claim in federal court after he was shot by officers in his home during an arrest. In state court, Helman pled guilty to resisting law enforcement, acknowledging at his plea hearing that he "did knowingly or intentionally forcibly resist, obstruct or interfere with a law enforcement officer" and that he had "attempted to draw a deadly weapon." *Id.* at 762.

The district court granted summary judgment in favor of the defendants, finding the claim to be barred by *Heck*. The Seventh Circuit affirmed, concluding that because Helman's claim was premised on the assertion that he drew his weapon only in response to the officers' use of excessive force:

> Helman's version of the facts would necessarily imply the invalidity of his state court conviction for resisting law enforcement. It would have been objectively unreasonable for officers to open fire on a person who was not reaching for a weapon or otherwise acting in a threatening manner, and therefore the officers would have been employing excessive force if they did so. . . . If Helman attempted to access the gun only after the officers began firing at him, then Helman would have been attempting to draw a deadly weapon in response to excessive force. Accordingly, under *Heck*, Helman may not pursue a § 1983 claim premised upon that factual scenario.

*Id.* at 763.

In sum, a plaintiff who has been found guilty of resisting arrest cannot maintain a Fourth Amendment claim premised on allegations that she did not resist being taken into custody but can proceed based on allegations that officers used excessive force in effecting custody or after doing so. Thus, plaintiff cannot proceed based on her allegation that she was not resisting arrest, ECF No. 1, ¶ 199, as doing so would necessarily be inconsistent with the essential facts supporting the state court conviction. But plaintiff further alleges that Bappert "violently yanked her arms into an unnatural position" while placing her in handcuffs, *Id.*, ¶ 149, walked her "barefoot, over portions of limestone," *Id.*, ¶ 150, "violently attempted to shove" her into his police car, *Id.*, ¶ 151, "shoved" her into an ambulance, "violently slammed" her onto a gurney "where she landed on the handcuffs behind her back," and "grabb[ed] and push[ed]" her into full body restraints, *Id.*, ¶ 155. These allegations, that Bappert used excessive force during

8

the arrest and after plaintiff had stopped resisting, do not necessarily imply the invalidity of the state court conviction. Therefore, plaintiff can proceed on an excessive force claim against Bappert.[3] To hold otherwise "would imply that once a person resists law enforcement, [s]he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages." *VanGilder*, 435 F.3d at 692. I will therefore deny defendants' motion to dismiss plaintiff's excessive force claim.

### 3.    Unlawful Destruction of Private Property; Aiding and Abetting

Plaintiff alleges that Bappert, Sowa, Jurewicz, and DeLuca are liable for Nettleton's allegedly unlawful destruction of her private property because they were aware of Nettleton's intention to remove the fence, and "fail[ed] to intervene in such unlawful destruction." ECF No. 1, ¶¶ 208–224. Plaintiff further alleges that Bappert and Sowa "aided and abetted" Nettleton in destruction of her private property because Nettleton's removal of the fence constituted the misdemeanor crime of damage to property in violation of Wisconsin Statute § 943.01(1), and Bappert and Sowa failed to intervene to stop the commission of this crime. *Id.*, ¶¶ 225–238.

Plaintiff essentially challenges the defendants' failure to prevent Nettleton's destruction of her property on September 13, 2021. Nettleton was not employed by the Village and cannot be considered a "state actor" under § 1983; his allegedly unlawful destruction of plaintiff's fence was a purely private act by a private individual. Though the Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall

---

[3] When a plaintiff's complaint that includes some *Heck*-barred contentions and other cognizable arguments, "the proper response is not to toss the entire complaint." *Mordi*, 870 F.3d at 708 ("Instead, the judge must carve off any *Heck*-barred contentions and proceed with what remains.").

deprive any person of life, liberty or property, without due process of law," it does not impose "an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). The Supreme Court in *DeShaney* recognized that the Due Process Clause does not "requir[e] the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.* The Court concluded that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197. The defendants were thus under no affirmative obligation to intervene in Nettleton's allegedly unlawful destruction of plaintiff's fence. *See Parker v. Capital One Auto Fin., Inc.*, 729 Fed. Appx. 482, 484 (7th Cir. 2018) (affirming dismissal of plaintiff's § 1983 claim against officers who failed to intervene in a private, unlawful repossession of plaintiff's property). I will therefore dismiss the unlawful destruction of private property claim and the aiding and abetting unlawful destruction of private property claim.

### 4. Excessive Fines

Plaintiff alleges that Bappert, Holtz, and Goldsworthy imposed excessive fines. ECF No. 1, ¶¶ 239–254. The Eighth Amendment prohibits the imposition of "excessive fines." U.S. Const. amend. VIII. Plaintiff alleges that Bappert, Holtz, and Goldsworthy issued her "over 100 legally unfounded citations" with fines totaling "at least $81,492.50.[4]" ECF No. 1, ¶¶ 241–242. But plaintiff fails to explain how the issuance of

---

[4] This number appears to represent the total exposure plaintiff could have faced if the maximum penalty for each citation was imposed. The Constitution prohibits the *imposition* of excessive fines, so fines that were never actually imposed on plaintiff cannot form the basis of an Eighth Amendment claim.

10

citations resulted in an actual imposition of fines. The challenged fines were imposed by the Walworth County Circuit Court at the time judgement was entered, not by the officers' issuance of the citations. To be held liable under § 1983, "the individual defendant must have 'caused or participated in a constitutional deprivation.'" *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (quoting *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994)). That the officers issued the citations that eventually resulted in the circuit court entering judgment is insufficient.

Even if plaintiff could show that the Bappert, Holtz, and Goldsworthy caused or participated in the alleged constitutional deprivation, her excessive fines claim fails as a matter of law. The Supreme Court has explained that under the Eighth Amendment, a punitive fine "must bear some relationship to the gravity of the offense it is designed to punish." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). A fine thus "violates the Excessive Fines clause if it is grossly disproportional to the gravity of a defendant's offense." *Id.* The Court in *Bajakajian* identified several factors to guide the proportionality determination, which the Seventh Circuit has distilled into four general areas of inquiry:

> The first looks to the "essence of the [offense] and its relation to other criminal activity." *United States v. Malewicka*, 664 F.3d 1099, 1104 (7th Cir. 2011). The second asks whether the sanctioned person "fit[s] into the class of persons for whom the statute was principally designed." *Id.* The third considers the "maximum sentence and fine that could have been imposed" for like conduct. *Id.* As the Court explained in *Bajakajian*, legislative judgments about maximum sentences and fines for comparable offenses are "relevant evidence" when assessing the gravity of the offense. 524 U.S. at 339 n.14, 118 S.Ct. 2028. The final factor is "the nature of the harm caused by the . . . conduct" that led to the sanction. *Malewicka*, 664 F.3d at 1104.

*Grashoff v. Adams*, 65 F.4th 910, 917 (7th Cir. 2023). I must also consider that "'judgments about the appropriate punishment for an offense belong in the first instance to the legislature,' and judicial determinations of the seriousness of any particular offense 'will be inherently imprecise.'" *Id.* (quoting *Bajakajian*, 524 U.S. at 336).

All the penalties imposed on plaintiff for violations of the Wisconsin Statutes were within the range established by the legislature for each offense. In Walworth County Circuit Court Case No. 2020FO1053, plaintiff was found guilty of disorderly conduct in violation of § 947.01(1) of the Village Code and fined $326.50. In Walworth County Circuit Court Case No. 2021CM572, plaintiff pled no contest to resisting an officer and disorderly conduct and was sentenced to pay costs and restitution; a judgment was entered for $200.00, $200.00, and $695.00, for a total of $1,095.00. Disorderly conduct is a Class B misdemeanor, which carries a penalty of "a fine not to exceed $1,000 or imprisonment not to exceed 90 days, or both." Wis. Stat. §§ 947.01(1), 939.51(3)(b). Resisting arrest is a Class A misdemeanor, which carries a penalty of "a fine not to exceed $10,000 or imprisonment not to exceed 9 months, or both." Wis. Stat. §§ 944.41(1), 939.51(3)(a). The "essence" of these offenses is disturbance of the peace and lawful order. Because such offenses have the potential to be quite severe, the state has a significant interest in deterring such behavior. For these charges, plaintiff received far less than the maximum penalty that could have been imposed. Indeed, she could have faced jail time. I defer to the judgment of the Wisconsin Legislature as to the appropriate punishment for such offenses. Because the state has a significant interest in deterring this type of conduct and the penalties imposed on plaintiff were well within

12

the range set by the legislature, I find that the fines imposed on plaintiff for the disorderly conduct and resisting arrest charges are not unconstitutionally excessive.

In Walworth County Circuit Court Case No. 2020FO1077, plaintiff was found guilty of trespass to land and fined $263.50. Whoever "[e]nters any enclosed, cultivated or undeveloped land of another . . . without the express or implied consent of the owner or occupant" commits trespass to land and is subject to Class B forfeiture, meaning "a forfeiture not to exceed $1,000." Wis. Stat. §§ 943.13(1m)(a), 939.52(3)(b). The conduct underlying this offense is clearly less severe than that discussed above. But the legislature acknowledges this in authorizing a lesser penalty. And the state still has an interest in protecting the property rights of owners and occupants. Again, the penalty imposed on plaintiff for this offense was well short of the maximum forfeiture she could have received. Considering this, I find that the fine imposed on plaintiff for the trespass to land charge is not unconstitutionally excessive.

Plaintiff was also fined for several violations of the Village Code. The General Penalty provision of the Village Code states that the penalty for a violation of any provision of the Code shall be, for the first offense, "not less than $25 nor more than $1,000," and for later offenses "not less than $25 nor more than $2,000." Village of Genoa City Code § 1-5(A)(1), (2). All penalties imposed on plaintiff for violations of the Village Code were within this permitted range.

In Walworth County Circuit Court Case No. 2020FO1073, plaintiff was found guilty of vandalism in violation of § 194-14 of the Village Code and fined $515.50. Vandalism involves "intentional[] damage to any physical property of another without his or her consent." Village of Genoa City Code § 194-14. The municipality's interest in

13

penalizing intentional property damage is understandable. Assuming this was plaintiff's first offense for vandalism, the penalty imposed was right in the middle of the prescribed range. Considering that the offense involves intentional harm to the property of another, I find that the penalty imposed for the vandalism charge is not unconstitutionally excessive.

Plaintiff pleaded no contest to ten violations[5] of § 261 of the Village Code for storage of junk of an abandoned vehicle and nine violations[6] of § 265-24 for prohibited street storage; she was fined $263.50 for each citation, for a total of $5,006.50. The General Penalty provision of the Village Code states that "[e]ach violation and each day a violation continues or occurs shall constitute a separate offense." Village of Genoa City Code § 1-5(B). The consideration is thus whether the penalty of $263.50 per violation is constitutionally excessive. Section 261-3 states that no person "shall leave unattended any junked, stored, abandoned or unregistered vehicle for such time and under such circumstances as to cause the vehicle to reasonably appear to have been abandoned." And § 265-24 states that "[n]o vehicle shall be left parked or standing on any street or parkway for more than 24 continuous hours" without a permit. These ordinances are designed to prevent vehicles, junked or otherwise, from obstructing street traffic and parking. This is a legitimate interest for the municipality, and the penalty must be sufficient to motivate an offender to move their vehicle. Considering

---

[5] Walworth County Circuit Court Case Nos. 2021FO456, 2021FO458, 2021FO481, 2021FO484, 2021FO485, 2021FO500, 2021FO521, 2021FO522, 2021FO523, and 2021FO524.

[6] Walworth County Circuit Court Case Nos. 2021FO457, 2021FO480, 2021FO482, 2021FO483, 2021FO502, 2021FO525, 2021FO526, 2021FO527, and 2021FO528.

this, I cannot conclude that $263.50 per violation is grossly disproportionate to the offense and find that the fines penalties imposed for these violations are not constitutionally excessive.

Plaintiff was found guilty of twenty-five zoning violations resulting from the placement of her fence between August 3, 2021, and September 22, 2021, and was fined $25.00 each on three of the citations, $50.00 each on eight of the citations, and $100.00 each on fourteen of the citations for a total of $1,875.00. Because the Village Code considers continuing violations to be separate offenses, I consider whether the amount assessed for each fine was constitutionally excessive. A zoning violation is a relatively a minor offense. There is no intent needed for a fence to be noncompliant with the ordinance, and the potential for harm is minimal. Thus, the penalties for the first three citations were appropriately low, at the $25.00 minimum. But the municipality has an interest in encouraging compliance with the ordinance. Accordingly, as the violations continued, the penalty increased. I find that imposing a slightly higher penalty of $50.00 and then $100.00 after there had already been several previous violations is not grossly disproportionate to the severity of the offense and conclude that the penalties imposed for the zoning violations are not constitutionally excessive.

Because none of the fines imposed on plaintiff for the violations outlined in her complaint were constitutionally excessive, I will dismiss plaintiff's excessive fines claim.

### 5.    Denial of Due Process

Plaintiff alleges that Bappert, Antti, Parker, DeLuca, Border, Jurewicz, and Attorney Gray denied her due process in failing to follow the procedure outlined in Chapter 310 of the Village Code in issuing her the zoning violation citations. ECF No. 1,

¶¶ 255–274. The Due Process Clause of the Fourteenth Amendment "imposes basic procedural obligations on the government—in most cases, prior notice and a meaningful opportunity to be heard—before it deprives a person of life, liberty, or property." *Manley v. L.*, 889 F.3d 885, 890 (7th Cir. 2018) (citing *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985)). The mere deprivation by state action of a constitutionally protected interest is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law. *Wallace v. Tilley*, 41 F.3d 296, 299 (7th Cir. 1994).

I note that whether or not the defendants violated any of the ordinances in the Village Code is wholly irrelevant to the constitutional due process inquiry. In *Loudermill*, the Supreme Court noted that the issue of "what process is due" is not answered by state law or local ordinances, but by constitutional benchmarks. 470 U.S. at 541–42. Plaintiff alleges that Chapter 310 of the Village Code does not authorize Bappert to enforce the zoning provisions of the Code, and thus Bappert's enforcement efforts violated her due process rights. ECF No. 1, ¶ 262. Plaintiff further contends that § 310-11(C) of the Code, which states that the Zoning Administrator shall "investigate all complaints, give notice of violations and enforce the provisions of this chapter," creates an affirmative obligation on DeLuca and Border to undertake such efforts, and that their failure to do so violated her due process rights. *Id.*, ¶¶ 258, 266. Plaintiff also asserts that § 310-69(B)(6)(e) of the Village Code, which states that the Zoning Administrator "shall enforce this Ordinance with the Assistance of the Village Attorney," creates an affirmative obligation for Attorney Gray to participate in the enforcement process and that Gray's failure to do so deprived plaintiff of due process. *Id.*, ¶ 266. However, the

16

law is clear that the government's failure to follow its own procedures does not violate the Due Process Clause. *Scott v. Village of Kewaskum*, 786 F.2d 338, 342 (7th Cir. 1986) (citing *Olim v. Wakinekona*, 461 U.S. 238 (1983)); *Wallace*, 41 F.3d at 301 ("The denial of state procedures in and of itself does not create inadequate process under the federal constitution."). Accordingly, these allegations alone do not support a procedural due process claim.

To succeed on a procedural due process claim, plaintiff must demonstrate "(1) deprivation of a protected interest and (2) insufficient procedural protections surrounding that deprivation." *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). Plaintiff clearly has a protected property interest in the money used to pay the fines imposed for the zoning violations. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) (including money in the list of quintessential property rights protected by the Constitution). The question is thus whether the pre-deprivation process received by plaintiff afforded her meaningful "notice and opportunity for hearing appropriate to the nature of the case." *Loudermill*, 470 U.S. at 542.

Between August 3, 2021, and September 22, 2021, the Village issued plaintiff twenty-five zoning violation citations, which she alleges carried a "fine" of $1,000.00 each. ECF No. 1, ¶ 108. But the Village had not yet "deprived" her of her property upon the issuance of each citation. *See Lawshe v. Simpson*, 16 F.3d 1475, 1478–80 (7th Cir. 1994) (due process claim accrues upon actual deprivation, not notice of threatened deprivation). Each violation was prosecuted in the Walworth County Circuit Court. Plaintiff received a jury trial on ten of the zoning violations and a court trial on the remaining fifteen violations. She was found guilty in all cases and fined considerably

17

less than $1,000.00 per violation. These proceedings carried with them all the procedures and protections of a formal trial, including the Wisconsin statutes governing civil procedure and the admission of evidence. Plaintiff had the right to appeal the outcome of the proceeding to the Wisconsin Court of Appeals, which she did not do. *See Tucker v. City of Chicago*, 907 F.3d 487, 492 (7th Cir. 2018) ("[A] plaintiff who foregoes her right to pursue post-deprivation remedies available under state law faces a high hurdle in establishing a due process violation."). I cannot find that a formal state court trial was constitutionally deficient process. Plaintiff was not deprived of a protected property interest without due process of law. Accordingly, I will dismiss plaintiff's due process claim.

### 6. Cruel and Unusual Punishment

Plaintiff alleges that while in the Walworth County Jail following her arrest on September 13, 2021, she was denied an adequate dosage of her prescription medication, held in a cell that was not properly sanitized, and denied adequate medical care, in violation of her Fourteenth Amendment[7] right to not be subjected to cruel and unusual punishment. ECF No. 1, ¶¶ 275–288. She alleges this claim against Bappert and Sowa. As discussed above, an individual defendant must have "caused or participated" in the alleged constitutional deprivation to be held liable under § 1983. *Pepper*, 430 F.3d at 810. Plaintiff does not allege that Bappert or Sowa participated in denying her prescription medication, rendering inadequate medical care, or failing to

---

[7] Plaintiff incorrectly characterizes this as a violation of her Eighth Amendment rights. But constitutional rights of pretrial detainees are derived from the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, which is applicable to convicted prisoners. *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015).

18

properly sanitize her jail cell. She alleges only that Bappert and Sowa's arrest of her caused her to be held in the Walworth County Jail, resulting in her being subjected to these allegedly deficient conditions of confinement. This is not enough to hold Bappert and Sowa liable. Because the named defendants did not directly participate in the alleged deprivation of her Fourteenth Amendment rights, I will dismiss plaintiff's cruel and unusual punishment claim.

### 7.    Failure to Train/Supervise

Plaintiff alleges that the Village, Chief Balog, and Village Presidents Parker and Antti failed to train and supervise Lieutenant Bappert, Officer Sowa, Officer Holtz, and Officer Goldsworthy, and are thus liable for their alleged violations of plaintiff's rights. ECF No. 1, ¶¶ 289–300. A municipality[8] may not be held liable under § 1983 based on a theory of respondeat superior or vicarious liability. *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978). Municipal liability under § 1983 is limited to circumstances "when execution of a government's policy or custom, whether made by its law-makers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* "To establish an official policy or custom, a plaintiff must show that [her] constitutional injury was caused 'by (1) the enforcement of an express policy of the [Village], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final

_____

[8] It is unclear whether plaintiff names Balog, Parker, and Antti in their individual or official capacity. I note that an official capacity claim under § 1983 would be functionally the same as a claim against the Village. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local officials, for under *Monell*, local government units can be sued directly for damages[.]").

19

policymaking authority.'" *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010) (quoting *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001)).

There can be no liability under *Monell* for failure to train or supervise when there has been no underlying violation of the plaintiff's constitutional rights. *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007). I have dismissed all of plaintiff's § 1983 claims for failure to state a claim, except for her excessive force claim against Bappert. Thus, to proceed on a *Monell* claim against the Village, plaintiff must plead facts demonstrating that the excessive force used by Bappert was attributable to an official policy or a widespread custom or practice of poor training or inadequate supervision.

Plaintiff alleges that the Village, Balog, Parker, and Antti "made deliberate policy choices" in failing to properly train and supervise Bappert, resulting in excessive use of force against plaintiff. ECF No. 1, ¶¶ 295–296. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). But the failure "must amount to 'deliberate indifference to the rights of persons with whom the untrained employees come into contact.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). A municipality may be deemed deliberately indifferent if policymakers fail to implement training when they are on "actual or constructive notice that a particular omission in their training program causes [Village] employees to violate citizens' constitutional rights[.]" *Id.* (citing *Bd. of Cnty. Comm'rs. v. Brown*, 520 U.S. 397, 407 (1997)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to

20

train." *Id.* at 62 (citing *Brown*, 520 U.S. at 409). A less stringent standard of fault for a failure-to-train claim "would result in de facto respondeat superior liability on municipalities." *Harris*, 489 U.S. at 392. Here, plaintiff does not allege any "pattern" of constitutional violations by the Village police officers; she alleges only a single incident of excessive force against her. And she does not allege that Village policymakers otherwise had actual or constructive notice that lack of training was causing constitutional violations. Plaintiff has therefore failed to state a claim for failure to train.

To the extent that plaintiff seeks to proceed on a claim against Balog, Parker, and Antti in their individual capacity, § 1983 "does not allow actions against individuals merely for their supervisory role of others." *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000). Individual liability under § 1983 "can only be based on a finding that the defendant caused the deprivation at issue." *Kelly v. Mun. Courts of Marion County, Ind.*, 97 F.3d 902, 909 (7th Cir. 1996). A § 1983 claim against an individual must be supported by evidence of personal involvement in the alleged constitutional deprivation. *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 811 (7th Cir. 2000); *Zimmerman*, 226 F.3d at 574. Although supervisors "need not participate directly in the deprivation for liability to follow under § 1983," *Backes v. Village of Peoria Heights, Ill.*, 662 F.3d 866, 869–70 (7th Cir. 2011), there must at least be some showing that the defendant acquiesced in some demonstrable way in the alleged constitutional violation, *Kelly*, 97 F.3d at 909. Supervisors may be held liable under § 1983 for the actions of subordinates only if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Jones v. City of Chicago*, 856 F.2d 985, 992–93 (7th Cir. 1988). In other words, they must have acted either knowingly or

21

with deliberate, reckless indifference; supervisors who are negligent, even grossly negligent, in failing to detect and prevent subordinates' misconduct are not liable. *Id.*

The complaint does not allege that Balog, Parker, or Antti was physically present or otherwise involved in plaintiff's arrest in any way. Plaintiff does not allege that they knew or should have known that Bappert had a pattern of engaging in improper behavior or that they condoned such behavior. Plaintiff alleges only that the defendants "made deliberate policy choices" in failing to properly train and supervise Bappert. ECF No. 1, ¶ 295. This is insufficient. Plaintiff has pled no facts that plausibly suggest that Balog, Parker, or Antti personally facilitated, approved, condoned, or turned a blind eye to any unlawful conduct. The complaint thus fails to state a supervisory liability claim against Balog, Parker, and Antti. Accordingly, I will dismiss plaintiff's failure to train and supervise claim.

## B.    Plaintiff's State Law Claims

Plaintiff also asserts state law claims for abuse of process, malicious prosecution, destruction of private property, negligent prosecution, intentional infliction of emotional distress, and negligent infliction of emotional distress. I do not have original jurisdiction over these claims, as there is no diversity of citizenship between the parties and the claims do not arise under federal law. But when a district court has original jurisdiction over an action, it also has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Claims form part of the same case or controversy when they

22

"derive from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

As discussed above, I have dismissed all of plaintiff's federal claims except for her excessive force claim. This claim over which I have original jurisdiction is relatively simple and involves only one defendant, Bappert. The claim turns on whether Bappert's use of force was reasonable considering the totality of the facts and circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The operative facts of the claim involve the events of September 13, 2021, plaintiff's conduct leading up to her arrest, the amount of force used by Bappert, and any injuries suffered after the fact. Plaintiff's abuse of process, malicious prosecution, negligent prosecution, intentional infliction of emotional distress, and negligent infliction of emotional distress claims involve the enforcement, issuance, and prosecution of the zoning and trespass citations she received; her arrest on September 13, 2021, is not relevant to the resolution of these claims. I therefore cannot say that these claims form part of the same case or controversy as plaintiff's § 1983 claim.

It is arguable that plaintiff's destruction of private property claim against Nettleton for the alleged destruction of her fence on September 13, 2021, is tangentially related to the excessive force claim because the altercation between plaintiff and Nettleton regarding the destruction of her fence led to plaintiff's arrest. But the operative facts necessary to resolve the state law destruction of property claim include facts such as where the fence was located, where fence crossed the property line, and what methods

23

Nettleton employed in destroying the fence. The details of the arrest, the force used by Bappert, and plaintiff's injuries after the fact are not relevant to the resolution of this claim. Though the altercation between plaintiff and Nettleton will be relevant to the excessive force claim in considering "the severity of the crime" that led to her arrest, the location of the fence and how and why it was destroyed will not be at issue. I cannot say this claim and the excessive force claim derive from a common nucleus of operative fact. I therefore find that I do not have supplemental jurisdiction over plaintiff's state law claims because they are not so related that they form part of the same case or controversy as the claim over which I have original jurisdiction.

Even if I could find that the state law claims form part of the same case or controversy as the excessive force claim, I would decline to exercise supplemental jurisdiction. The fact that § 1367(a) authorizes a district court to exercise jurisdiction over state claims "does not mean that the jurisdiction *must* be exercised in all cases." *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 172 (1997) (emphasis in original). A district court may decline to exercise supplemental jurisdiction over a state law claim if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). Plaintiff alleges several complex state law claims against thirteen individual defendants that are no longer parties to any federal claims. The discovery for these claims would be much more extensive than what will be required for the excessive force claim, with little overlap between them. These claims undoubtedly would substantially predominate over the relatively small § 1983 claim over which I have original jurisdiction. Accordingly, I will

dismiss plaintiff's state law claims without prejudice for lack of subject-matter jurisdiction. Plaintiff is free to proceed on such claims in state court.

**C.      Proposed Intervenor's Motion to Intervene and Bifurcate Coverage**

On February 12, 2024, proposed intervenor Certain Underwriters at Lloyd's of London filed a motion to intervene and bifurcate the issue of coverage from the merits of this case because the complaint raises questions concerning the Underwriters' duty to defend and indemnify defendant Ellis Border. ECF No. 103. But as I have dismissed all of plaintiff's claims against Border, I will deny the motion as moot.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that Attorney Gray and Attorney Harvey's motion for leave to file a supplemental brief (ECF No. 95) is **GRANTED**.

**IT IS FURTHER ORDERED** that Attorney Gray and Attorney Harvey's motion to dismiss (ECF No. 90), Border and Nettleton's motion to dismiss (ECF No. 111), the Village Defendants' motion to dismiss (ECF No. 114), and Williams' motions to dismiss (ECF Nos. 99 & 117) are **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's false arrest claim, unlawful destruction of private property, aiding and abetting unlawful destruction of private property, excessive fines, denial of due process, cruel and unusual punishment, and failure to train/supervise claims are **DISMISSED WITH PREJUDICE** for failure to state a claim on which relief may be granted.

**IT IS FURTHER ORDERED** that plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

**IT IS FURTHER ORDERED** that the Clerk shall terminate the Village of Genoa City, Kenneth Parker, James DeLuca, Linda Gray, Steven Harvey, Joseph Balog,

Shaun Sowa, Kimberly Goldsworthy, William Antti, Ellis Border, Claudia Jurewicz, Employers Mutual Insurance Company, William Nettleton, and Sandra Williams as defendants.

**IT IS FURTHER ORDERED** that proposed intervenor Certain Underwriters at Lloyd's of London's motion to intervene and bifurcate coverage (ECF No. 103) is **DENIED AS MOOT**.

Dated at Milwaukee, Wisconsin, this 1st day of August, 2024.


/s/ Lynn Adelman
LYNN ADELMAN
United States District Judge

26